495 So.2d 1298 (1986)
Elaine E. McLEAN
v.
Raymond K. HUNTER, et al.
No. 86-C-0786.
Supreme Court of Louisiana.
October 20, 1986.
Rehearing Denied November 13, 1986.
*1299 MacAllynn Achee, Baton Rouge, for applicant.
Carey Guglielmo, Baton Rouge, for respondent.
CALOGERO, Justice.[*]
In this dental malpractice litigation, we find ourselves in agreement with the court of appeal that the trial court erred in excluding from the jury certain portions of the testimony offered by Dr. Bruce Lovelace, a periodontist who would have testified relative to the standard of care applicable to general dentists practicing in Baton Rouge, Louisiana.[1] However, because we *1300 also find that an inappropriate standard of appellate review was used in assessing the effect of the trial court's error, we reverse and remand the case to the court of appeal for reconsideration of plaintiff's appeal. In accordance with this opinion, the reconsideration shall embody the appropriate standard of appellate review. Due consideration shall be given to all evidence in the record, including the proffered testimony of Dr. Lovelace. The court of appeal shall make an independent determination of whether or not the plaintiff's evidence preponderates, without affording any deference to the jury verdict.

Facts
On or about June 13, 1983, Ms. Elaine McLean filed suit against Dr. Raymond K. Hunter, alleging Dr. Hunter committed various acts of dental malpractice in his diagnosis and treatment of a condition known as periodontal disease.[2] Dr. Hunter is a practitioner of general dentistry. Plaintiff initially visited Dr. Hunter on an isolated occasion in December of 1977. Beginning in November of 1979, however, Ms. McLean began making repeated visits to Dr. Hunter for treatment of her dental problems. On September 2, 1981, she visited Dr. Hunter's office for treatment of an abscess. Because Dr. Hunter was out of his office on that date, Ms. McLean was examined by Dr. Thompson Lanius, a practitioner of general dentistry who shared office space with Dr. Hunter.
Dr. Lanius diagnosed a "periodontal abscess" in two of Ms. McLean's teeth. He then performed limited oral surgery to insure drainage of the abscess. When Ms. McLean returned on September 9, 1981, Dr. Lanius, after having discussed the case with Dr. Hunter, referred Ms. McLean to Dr. Bruce Lovelace, a periodontist.[3] Upon his examination of Ms. McLean, Dr. Lovelace diagnosed her condition as chronic, moderate to advanced periodontal disease. It is undisputed that Ms. McLean thereafter underwent extensive treatment for this condition.
At trial,[4] Dr. Lovelace was called to testify on behalf of Ms. McLean and was tendered as an expert in "periodontics." During the course of Dr. Lovelace's testimony, counsel for Dr. Hunter asked that the jury be excused. After the jury departed, counsel objected to Dr. Lovelace's offering any testimony as to the standard of care exercised by dentists engaged in the practice of general dentistry in Baton Rouge, Louisiana. The trial court, relying on La.R.S. 9:2794, sustained the objection. Plaintiff thereupon proferred the pertinent testimony of Dr. Lovelace.
Plaintiff subsequently called to the stand two additional periodontists, Dr. Alfred W. Broxson and Dr. Joseph Lawrence, and attempted to qualify the doctors as experts in general dentistry. This move was also rebuffed by the trial court. However, the trial court did accept Dr. Broxson and Dr. Lawrence as experts in periodontistry rather *1301 than as experts in general dentistry. Questioning of Dr. Broxson and Dr. Lawrence was then limited to hypothetical questions concerning practitioners of periodontistry. Both doctors were permitted to testify relative to the standard of care expected of periodontists in the Baton Rouge area. They were not permitted to testify as to the standard of care applicable to general dentists practicing in the Baton Rouge area.
The trial court also allowed plaintiff's counsel to question the defendant concerning the extent of his dental practice in the field of periodontistry. The trial court then instructed the jury it would have to decide whether Dr. Hunter had held himself out as a specialist in periodontistry. If the jury found Dr. Hunter had held himself out as a specialist, he was to be judged by the standards of a specialist (the latter standards having been attested to by Dr. Broxson and Dr. Lawrence). However, if the jury found Dr. Hunter had not held himself out as a specialist, the trial judge, in effect, instructed the jury to disregard the testimony of Dr. Broxson and Dr. Lawrence, since the testimony elicited from the two periodontists addressed the appropriate standard of care for practitioners of periodontistry, rather than for practitioners of general dentistry.
The jury, in response to written interrogatories provided by the trial court, found Dr. Hunter was to be judged in accordance with the standard of care applicable to a "general practitioner of dentistry" rather than to the standard of care applicable to a "periodontist." The jury further found the defendant's conduct was not below the standard of care applicable to a practitioner of general dentistry. Accordingly, the jury rendered a verdict in favor of Dr. Hunter.
The effect of the trial court's instructions was that none of the three periodontists called by the plaintiff were allowed to express an expert opinion as to the appropriate degree of periodontal care expected of general dentists practicing in the Baton Rouge area, nor were they allowed to express an expert opinion as to whether conduct presumably similar to Dr. Hunter's may have breached that standard. The instructions provided by the trial court served to nullify the opinions of Dr. Broxson and Dr. Lawrence, who were allowed to testify only as to the appropriate standard of care expected from practitioners of periodontistry. Although plaintiff's counsel objected in general to the trial court's rulings relative to the testimony of Dr. Broxson and Dr. Lawrence, he did not proffer the testimony of the periodontists, as he had done previously with the testimony of Dr. Lovelace.[5]
As was previously noted, the court of appeal held the trial court erred in excluding the expert testimony of Dr. Lovelace concerning the appropriate standard of care for general dentists practicing in the Baton Rouge area.[6] However, using the following reasoning, the First Circuit held that the error did not warrant reversal:
However, even though the trial court may have erred in excluding this testimony, this exclusion does not alone appear so prejudicial that its admission would have changed the outcome of the trial. Even with the addition of the proferred testimony, the jury could have reached the same result without committing manifest error.... While conceding Dr. Lovelace possesses impressive credentials, we are not persuaded that the admission of his proferred testimony would have changed the outcome of trial. Our independent review of all the evidence, including the proferred testimony, does not disclose the result reached was clearly wrong. Accordingly, the error committed *1302 by the trial court in this respect does not warrant reversal.
It is this language which prompted our granting writs in this case.

TESTIMONY OF DR. LOVELACE
In excluding the testimony of Dr. Lovelace, the trial court relied on La.R.S. 9:2794(A)(1), which provides, in pertinent part:
A. In a malpractice action based on the negligence of a ... dentist licensed under R.S. 37:751 et seq.... the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by ... dentists ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by ... dentists... within the involved medical specialty.
As the court of appeal correctly noted, this provision sets forth the requisite burden of proof, but does not specify or set limits on the qualifications of a professional witness who may be presented to sustain the burden.
We now hold it is a specialist's knowledge of the requisite subject matter, rather than the specialty or sub-specialty within which the specialist practices, which determines whether a specialist may testify as to the degree of care which should be exercised by general practitioners. A particular specialist's knowledge of the subject matter on which he is to offer expert testimony should be determined on a case by case basis.
Implicit support for our holding is provided by La.R.S. 9:2794(B), which provides that a party to a malpractice suit has "the right to subpoena any ... dentist ... for trial to establish the ... degree of care ordinarily exercised." A periodontist such as Dr. Lovelace is obviously no less a dentist because he engages in a specialty practice rather than a general dentistry practice.
Although we have not previously addressed this particular issue, we find support for our opinion in the decisions of other state courts. A case with a particularly compelling factual setting is Evans v. Ohanesian, 39 Cal.App.3d 121, 112 Cal. Rptr. 236 (1974). In Evans, a dental malpractice suit was brought against a practitioner of general dentistry. The plaintiff, in order to meet the requisite burden of proof, offered the testimony of a periodontist who examined the plaintiff subsequent to the general practitioner's treatment.
The trial court refused to permit the periodontist to express an opinion as to the standard of practice of general practitioners and would not allow him to express an opinion as to whether the defendant breached that standard. Outside the presence of the jury, the trial court noted "[the periodontist's] standard of practice as a specialist was higher than the standard of practice of general practitioners ... and... it would be unfair to hold the defendant to a higher standard of practice than that possessed generally by other dentists...." Evans, 112 Cal.Rptr. at 239. Thereafter, using language with which we are in agreement, the California Court of Appeal found the trial court had erred in excluding the periodontist's testimony:
To qualify a witness as a medical expert, it must be shown that the witness (1) has the required professional knowledge, learning and skill of the subject under inquiry sufficient to qualify him to speak with authority on the subject; and (2) is familiar with the standard required of a physician under similar circumstances; where a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than to its admissibility.
* * * * * *

*1303 Nor is it critical whether a medical expert is a general practitioner or a specialist so long as he exhibits knowledge of the subject. Where a duly licensed and practicing physician has gained knowledge of the standard of care applicable to a specialty in which he is not directly engaged but as to which he has an opinion based on education, experience, observation or association with that specialty, his opinion is competent. The reason for not requiring specialization in a certain field is obvious. Physicians are reluctant to testify against each other. Consequently, when an expert can be found, it is immaterial whether he is a general practitioner or a specialist providing he has knowledge of the standard of care in any given field; otherwise, the plaintiff could never prove a case against a specialist unless he had an expert of the particular specialty, and the plaintiff would never be able to sue a general practitioner unless he had a general practitioner who was willing to testify as an expert. Evans, 112 Cal.Rptr. at 240, 241 (citations omitted).
A similar decision was reached by the Michigan Supreme Court in Siirila v. Barrios, 398 Mich. 576, 248 N.W.2d 171 (1976). In this case, a medical malpractice suit was brought against a general practitioner and a hospital. When plaintiff's counsel attempted to have a pediatrician testify as to the standard of care applicable to the general practitioner, the trial court instructed the jury the pediatrician's testimony was not to be considered in determining the standard of care applicable to the general practitioner. The Michigan Supreme Court disagreed, and held specialists may testify to the standard of care expected of general practitioners "as long as the specialist is familiar with the applicable standard of the general practitioner." Siirila, 248 N.W.2d at 172.
Turning now to the facts before us, we find Dr. Lovelace was qualified to testify as to the standard of care expected of general dentists practicing in Baton Rouge, Louisiana. Dr. Lovelace's knowledge of the requisite standard of care is evidenced by the following:
(1) Dr. Lovelace graduated from the Louisiana State University School of Dentistry.
(2) Upon graduation, Dr. Lovelace became licensed to practice general dentistry in Louisiana. At the time of trial, Dr. Lovelace was so licensed.
(3) As a part time faculty member at the L.S.U. Dental School, Dr. Lovelace teaches periodontics to future general dentists.
(4) Approximately eighty (80) percent of Dr. Lovelace's private practice consists of referrals from general dentists.
(5) Dr. Lovelace works in conjunction with general dentists concerning particular cases.
(6) Dr. Lovelace specifically testified he is familiar with general dentistry in the Baton Rouge area and he is further familiar with the appropriate standard of care and the skill and knowledge expected of general dentists in Baton Rouge.
In short, we find that Dr. Lovelace was amply qualified to testify concerning the standard of periodontal care required of general dentists practicing in Baton Rouge, Louisiana. The trial court thus erred in excluding the testimony of Dr. Lovelace.

SCOPE OF APPELLATE REVIEW
After finding that the testimony of Dr. Lovelace should not have been excluded, the court of appeal noted the proffered testimony was not "so prejudicial that its omission would have changed the outcome of the trial." The appellate court further noted the jury, if they had been allowed to hear the proffered testimony, could have reached the same result without committing manifest error. Finally, after making an "independent review" of the evidence (including the proffered testimony), the court of appeal noted the result reached by the jury was not "clearly wrong."
At the outset, we disagree with the court of appeal's assessment of the degree of prejudice of the excluded testimony. Given Dr. Lovelace's credentials, his extensive treatment of the plaintiff subsequent to the treatment rendered by Dr. Hunter, and the *1304 substance of the proffered testimony, we find the exclusion of the proffered testimony was extremely prejudicial to the plaintiff's case.[7] While we admit that the jury could have rendered a verdict in favor of Dr. Hunter had it been allowed to hear the proffered testimony, we are unable to state with any degree of certainty that the jury would have rendered such a verdict had it been allowed to hear that testimony. On the contrary, the proffered testimony may indeed have changed the outcome of the trial.
Furthermore, the court of appeal examined the record in this case with a view toward deciding whether the result reached by the jury was or was not "clearly wrong." When a jury is given incorrect instructions in the law, or when a trial court makes a consequential error in the exclusion of evidence, no weight should be accorded the judgment of the trial court which implements the jury verdict. See, Thomas v. Missouri Pacific R. Co., 466 So.2d 1280 (La.1985); Otto v. State Farm Mut. Auto. Ins. Co., 455 So.2d 1175 (La. 1984); Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980); Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). The jury verdict in this case was "tainted" by the trial court's consequential error in excluding the testimony of Dr. Lovelace. In such situations the jury verdict is simply not entitled to a presumption of regularity. See, Thomas v. Missouri Pacific R. Co., 466 So.2d at 1284.
What an appellate court must do at this juncture is make an independent review of the record before it and decide which party should prevail by a preponderance of the evidence. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).[8] Due consideration and appropriate weight should be given to all of the evidence. In the case before us, that considered evidence should include the improperly excluded testimony of Dr. Lovelace.
A court of appeal should not (as was done here) decide whether a tainted jury verdict was "manifestly erroneous" or not "clearly wrong."[9] The manifestly erroneous or clearly wrong standard of appellate review is the standard by which the facts found by the trial court are measured. It assumes that consequential evidentiary rulings and instructions on the law were correct and proper. See, Ragas v. Argonaut Southwest Ins. Co., 388 So.2d at 708. Thus, the clearly wrong or manifestly erroneous standard of review applies only to jury verdicts which follow properly conducted trials. The standard should not be applied when the jury verdict is tainted by error. Accordingly, we will reverse and remand the case to the court of appeal for a reconsideration of the plaintiff's appeal. In accordance with this opinion, the reconsideration shall embody the appropriate standard of appellate review. Due consideration shall be given to all evidence in the record, including the proffered testimony of Dr. Lovelace. The court of appeal shall make an independent determination of whether or not the plaintiff's evidence preponderates, without affording any deference to the jury verdict.

*1305 FAILURE TO PROFFER
In her second specification of error to this Court, Ms. McLean complains the court of appeal erred in not further considering the "excluded" testimony of Dr. Broxson and Dr. Lawrence. As was previously discussed, the interrogation of the two periodontists was limited to hypothetical questions and the standard of care applicable to practitioners of periodontistry. The trial court would not allow Dr. Broxson and Dr. Lawrence to testify relative to the standard of care exercised by general practitioners. Although plaintiff's counsel objected generally to this line of questioning, he did not proffer the testimony of Dr. Broxson and Dr. Lawrence, as he had done with the testimony of Dr. Lovelace. The court of appeal held that in the absence of a proffer, plaintiff's counsel could not complain "the exclusion of this testimony was error."
La.C.C.P. art. 1636 provides, in pertinent part:
When a court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence.
Ms. McLean argues La.C.C.P. art. 1636 is not applicable here, since the trial court did not exclude the pertinent testimony, but rather merely altered it. According to plaintiff's counsel, a proffer would have been "vain and useless," since the proffer would have merely amounted to a substitution of the words "general dentist" for "a practitioner of periodontology." As we understand the argument, a proffer in this case was unnecessary since, according to plaintiff's counsel, Dr. Broxson and Dr. Lawrence would have responded in the same fashion (i.e., treatment similar to that afforded plaintiff by defendant would be below an asserted standard of periodontal care for general dentists in the Baton Rouge area) had the hypothetical questions addressed the standard of care applicable to general dentists, rather than practitioners of periodontistry.
In fact, such a supposition is not at all so evident. The very purpose of requiring a proffer is to preserve excluded testimony so that the testimony (whatever its nature) is available for appellate review. Without a proffer, appellate courts have no way of ascertaining the nature of the excluded testimony. In the case at bar, we have no way of knowing how Dr. Broxson and Dr. Lawrence would have testified in this regard had they been allowed to do so. The court of appeal therefore correctly held that the plaintiff is precluded from complaining of the "exclusion" of Dr. Broxson's and Dr. Lawrence's testimony, inasmuch as she did not proffer that testimony.[10]See, Engineered Mechanical Services v. Langlois, 464 So.2d 329 (La.App. 1st Cir.1985), writ denied, 467 So.2d 531 (La. 1985); Grusich v. Grusich, 447 So.2d 93 (La.App. 4th Cir.1984); Jeffers v. Amoco Production Co., 405 So.2d 1227 (La.App. 1st Cir.1981).

Decree
For the foregoing reasons, we reverse the judgment of the court of appeal and remand the case to the court of appeal for a reconsideration of plaintiff's appeal consistent with the principles of appellate review set forth in this opinion.
REVERSED; REMANDED TO THE COURT OF APPEAL.
NOTES
[*] Thomas C. Wicker, Jr., Associate Justice ad hoc, sitting for Associate Justice Luther F. Cole, recused.
[1] McLean v. Hunter, 486 So.2d 816 (La.App. 1st Cir.1986).
[2] Ms. McLean also brought suit against Dr. Hunter's alleged insurer, Aetna Casualty and Surety Company (Aetna). Aetna was dismissed from the litigation via directed verdict at the close of plaintiff's case-in-chief. The dismissal of Aetna does not form a part of the controversy at bar.
[3] Periodontics is a branch of dentistry that deals with diseases of the supporting structure of the teeth.
[4] Before filing her petition, Ms. McLean, in compliance with La.R.S. 40:1299.47, filed a request for review of her malpractice claim with the Louisiana Commissioner of Insurance. Pursuant to this statute, the request initiated procedures culminating in the selection of a medical review panel. That panel, once formed, reviews claims against certain covered health care providers (such as Dr. Hunter) and renders an opinion as to whether the defendant "acted or failed to act within the appropriate standards of care." La.R.S. 40:1299.47(G). The medical review panel formed prior to the inception of this litigation held, in accordance with La.R.S. 40:1299.47(G), that "[t]he evidence does not support the conclusion that the defendant failed to meet the applicable standard of care.... The conduct complained of was not a factor in the resulting damages."

In the lower courts, Ms. McLean complained the Medical Malpractice Act, La.R.S. 40:1299.41 et seq., was unconstitutional as applied to her. Ms. McLean abandoned her constitutional arguments in this Court. Accordingly, plaintiff's assertions of unconstitutionality will not be addressed in this opinion.
[5] Presumably, additional testimony from Dr. Broxson and Dr. Lawrence, which was not proffered, would have addressed the standard of care applicable to general dentists practicing in the Baton Rouge area, and would have included an opinion concerning whether conduct similar to Dr. Hunter's was substandard.
[6] The court of appeal also held Ms. McLean could not complain about the exclusion of Dr. Broxson's and Dr. Lawrence's testimony, since the pertinent testimony was not proffered.
[7] According to Dr. Lovelace, a general practitioner's failure in the following phases of dental treatment would be below the standard of care applicable to general dentists practicing in Baton Rouge, Louisiana:

(a) failing to use a periodontal probe in the diagnosis and treatment of periodontal disease;
(b) failing to provide the patient with a treatment plan;
(c) failing to chart and measure periodontal pockets;
(d) placing a dental bridge on a diseased tooth;
(e) failing to properly advise patients of the existence of periodontal disease; and
(f) failing to properly treat the etiology (cause) of periodontal disease, rather than merely draining periodontal abscesses.
[8] Under the 1974 Louisiana Constitution, the jurisdiction of courts of appeal (including the Supreme Court) extends to the review of facts as well as law. La.Const. art. V, § 10(B); art. V, § 5(C).
[9] We have noted that the terms "manifestly erroneous" and "clearly wrong" are, in the simplest sense, synonymous. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
[10] A different problem may have been presented had plaintiff's counsel requested an opportunity to proffer the testimony of Dr. Broxson and Dr. Lawrence. If counsel had made such a request, and had been denied same, the record may not have been sufficiently complete to warrant a remand. However, since a proffer was not attempted, the record is sufficiently complete to justify a remand of the case to the court of appeal.