Filed 7/18/13  Place v. Bernstein CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ERIC PLACE, | B236424 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. NC054754) |
| v. | |
| CLIFFORD BERNSTEIN, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judith A. Vander Lans, Judge.  Reversed.

Mancini & Associates, Timothy J. Gonzales; Benedon & Serlin, Douglas G. Benedon, Gerald M. Serlin and Wendy S. Albers for Plaintiff and Appellant.

Bonne, Bridges, Mueller, O'Keefe & Nichols and Joel Bruce Douglas for Defendant and Respondent.

Plaintiff Eric Place sued defendant Clifford Bernstein, M.D., among others, for medical malpractice after developing tachycardia following a procedure known as accelerated opiate neuron-regulation (AONR) to detoxify from his chronic dependency on Oxycontin. Place contended that his electrocardiogram (ECG or EKG)[1] performed before the AONR procedure revealed potential abnormalities that showed a contraindication for the procedure. Dr. Bernstein brought a motion for summary judgment supported by an expert's declaration stating that he met the applicable standard of care and did not cause Place's transient cardiomyopathy. The trial court granted the motion after sustaining Dr. Bernstein's foundational objections to the admission into evidence of the expert declarations Place submitted to oppose the motion. The trial court determined that Place's expert was not qualified to render an opinion and granted summary judgment.

We conclude the trial court erred in excluding the expert declarations Place submitted based upon the principles recently articulated in *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747 and in *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173. We further conclude the expert's declarations create triable issues of fact precluding summary judgment. We therefore reverse the judgment.

UNDISPUTED MATERIAL FACTS[2]

Place had a long-standing dependence on opiates, with a history of unsuccessful efforts to get off narcotics. Place consulted with Dr. Bernstein regarding rapid detoxification through the AONR procedure.

---

[1] ECG is the English acronym, and EKG is the acronym from the German word "Elektrokardiogramm."

[2] Place cites to his separate statement as the sole evidentiary support for some of his factual assertions. "[A] separate statement is not evidence; it *refers* to evidence submitted in support of or opposition to a summary judgment motion. In an appellate brief, an assertion of fact should be followed by a citation to the page(s) of the record containing the supporting evidence," not to the separate statement. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 178, fn. 4.)

Rapid detoxification is a process where the "withdrawal from opiates is rapidly done while the patient is under anesthesia, and the patient is given Naltrexone in an effort to satiate the opiate receptors and thus cut-down on post-detox craving amid the adjustment period which follows." "The patient's vital signs are perioperatively controlled, inducing lower heart rates and blood pressure in contemplation of the sympathetic storm which the body rapidly undergoes during the process of an accelerated detoxification from opioid dependency."

1.  *Pre-Procedure EKG and AONR Procedure*

Place was admitted to Pacific Hospital of Long Beach (Pacific Hospital) on March 30, 2009,[3] where a medical history and physical examination was performed before the AONR procedure. Place reported no history of cardiac symptoms. The admitting EKG issued from Pacific Hospital's cardiology department was reported to indicate "[n]ormal sinus rhythm."

The AONR procedure was performed the following day.

2.  *Post-Procedure Tachycardia*

On April 2, two days after the AONR procedure, Place developed tachycardia, or rapid heart rate, which is a known risk of the procedure. Place was treated by a cardiologist.

Place was discharged from the hospital four days later when his heart function returned to acceptable limits. The discharge summary signed by Dr. Bernstein indicates the following: "The patient's original baseline EKG was performed on admission, 03/31/09 [*sic*], and an official copy was placed on the chart indicating normal sinus rhythm with a rate of 65. The patient did have a delayed progression across the V waves, but it seemed to fit the patient body habitus which was tall and thin young male. Only after the patient had a cardiac event noted below did the cardiologist over read the EKG stating that there was a vertical axis T wave inversion in the anterior leads and may possibly be ischemia."

---

[3]     Unless otherwise indicated, all further dates refer to 2009.

3

The baseline EKG (dated 3/30) included in the medical records reviewed by the experts has handwritten notations stating: "vertical axis T-inversion Anterior Leads . . . consider ischemia." There also is a handwritten notation adding "ab" before the term "normal" in the typed heading stating "NORMAL ECG."[4]

Based upon these facts, Place filed a medical malpractice complaint against Dr. Bernstein, Pacific Hospital, and the two cardiologists who treated him following the AONR procedure.[5]

PROCEDURAL HISTORY

1. *The Summary Judgment Motion*

Dr. Bernstein filed a motion for summary judgment on two grounds: (1) Place could not establish a breach of duty because Dr. Bernstein's treatment met the applicable standard of care; and (2) Place could not establish causation because nothing Dr. Bernstein did, or failed to do, caused Place's injury. In support of the motion, Dr. Bernstein asserted that Place had been "adequately evaluated and worked-up and prepared for the procedure," within the standard of care, and Place's cardiac event was a known risk of the AONR procedure. In opposition, Place countered that Dr. Bernstein's treatment fell below the standard of care because he failed to read the baseline EKG, which showed potential abnormalities, failed to have the baseline EKG read by a cardiologist before the AONR procedure, and because the baseline EKG showed potential abnormalities, failed to cancel the AONR procedure to conduct further tests. According to Place, Dr. Bernstein's failure to read the baseline EKG and take the appropriate steps was the cause of Place's injury.

---

[4] There is no indication in the record when these handwritten notations were made, but it is undisputed that this occurred after the AONR procedure.

[5] The cardiologists were dismissed from the lawsuit. The trial court granted the summary judgment motion filed by Pacific Hospital. Place did not appeal.

4

In support of the motion, Dr. Bernstein submitted the declaration of board certified anesthesiologist Ronald Wender, M.D., who is trained and experienced in performing ultra-rapid opiate detoxification. No objections were made to Dr. Wender's declaration.

In opposition, Place submitted the declaration of Robert Kahn, M.D., board certified family practitioner. Dr. Kahn is a professor with the UCLA School of Medicine, affiliated with several Los Angeles area hospitals, and an "expert medical consultant" with the Medical Board of California. Objections were filed concerning Dr. Kahn's qualifications to render an opinion.

2. *Dr. Wender's Declaration in Support of the Summary Judgment Motion*

Dr. Wender reviewed Place's medical records. On the basis of his education, training in ultra-rapid opiate detoxification, and experience in performing hundreds of these procedures, Dr. Wender opined that Place was evaluated within the applicable standard of care before undergoing the AONR procedure. Dr. Wender noted that Place had "what was reported [as] a normal electrocardiogram." After what Dr. Wender describes as the "post-procedure cardiac event," he stated that a cardiologist read the EKG to find T-wave inversions in leads VI through V3. Dr. Bernstein, however, did not have the cardiologist's interpretation of the EKG until after Place had been medically cleared for the AONR procedure with a "normal" EKG. Dr. Wender stated the cardiologist's "interpretation is a non-specific finding, which can represent a normal variant, and it is not, without more, a contraindication for AONR."

Dr. Wender stated the AONR procedure is a stress to the organs, which is why before undergoing the procedure, the patient's heart rate is lowered through the use of Clonidine because the body responds to detoxification with elevated heart rates and high blood pressures. Dr. Wender noted Place's "heart responded to the detox with an intermittent subclinical cardiomyopathy secondary to the stress of AONR."

Dr. Wender was of the opinion that in treating Place, Dr. Bernstein complied with standard of care, and Dr. Bernstein "was not a proximate, legal or substantial factor in causing the complication which Mr. Place experienced, itself a known, inherent risk" of the AONR procedure.

5

3. *Dr. Kahn's Declaration in Opposition to the Summary Judgment Motion*

Dr. Kahn also reviewed Place's medical records and stated, based upon his training and experience as a family practitioner and clinical professor at UCLA, that he was familiar with the standard of care for physicians, nurses, and hospital staff. Dr. Kahn noted the baseline EKG performed before the AONR procedure revealed "a potential serious abnormality." He stated that "[w]ithout further definition of the abnormal EKG, the AONR procedure was contraindicated because," the "AONR procedure is extremely stressful on the heart." "As such, physicians, nurses and medical staff must make sure a patient's heart is in optimum condition prior to undergoing the AONR procedure." Based on the foregoing, Dr. Kahn opined that Dr. Bernstein's medical treatment was below the standard of care.

Dr. Kahn further opined: "It is also my opinion, to a reasonable degree of medical probability that Defendant Bernstein's failure to meet the standard of care caused Plaintiff's congestive heart failure, which was manifested by an ejection fraction of 20% and an elevated BNP following the AONR procedure on March 31, 2009."

4. *The Summary Judgment Motion Hearing*

The trial court announced its tentative decision granting the summary judgment motion based upon Dr. Wender's expert testimony. In response, Place's counsel argued Dr. Kahn's declaration created a triable issue of fact because he stated the abnormal EKG was a contraindication for the AONR procedure. The court responded that objections had been raised concerning Dr. Kahn's qualifications, and Dr. Kahn failed to establish any "knowledge regarding . . . the standard of care for anesthesia, cardiology or rapid detox, nor any specific knowledge as to the standard of care relating to the AONR procedure." In response, Place's counsel cited *Evans v. Ohanesian* (1974) 39 Cal.App.3d 121, for the proposition that it did not matter whether Dr. Kahn is a general practitioner or a specialist so long as he has knowledge of the subject matter.

The trial court took the matter under submission and gave both parties the opportunity to brief *Evans v. Ohanesian*, *supra*, 39 Cal.App.3d 121.

6

5. *Dr. Kahn's Supplemental Declaration*

After the matter was submitted, Place filed Dr. Kahn's supplemental declaration in which he stated he was familiar with the AONR procedure, having read and researched the indications, contraindications, and potential complications of that procedure. Objections were posed to the submission of this supplemental declaration.

6. *The Trial Court's Ruling Granting Summary Judgment*

The trial court concluded that, based upon Dr. Wender's expert testimony, Dr. Bernstein met his burden to establish he had complied with the standard of care and no act or omission on Dr. Bernstein's part had caused the cardiac event Place experienced after the AONR procedure.

Place, however, failed to create a triable issue of fact because the trial court sustained objections to Dr. Kahn's declaration on the ground that he was not qualified to render the opinions offered in his declaration. The ruling states: "Defendant has properly objected to this declaration as Dr. Kahn fails to establish that he has any knowledge regarding the standard of care for anesthesia, cardiology or rapid detox, nor any specific knowledge as to the standard of care relating to the AONR procedure. Dr. Kahn merely states that he is board certified in family medicine, he is a professor at UCLA, he holds an appointment as an expert medical consultant to the Medical Board and he is in private practice. Dr. Kahn offers no facts to establish that he is qualified to render an opinion regard[ing] the AONR procedure, anesthesia or cardiology. As such, Dr. Kahn has not sufficiently established that he is qualified to render an opinion as to the care and treatment provided to Plaintiff by Dr. Bernstein and Plaintiff has submitted no other admissible evidence to raise a triable issue of material fact in opposition to Dr. Bernstein's motion."

The trial court also sustained the objections to Dr. Kahn's supplemental declaration on the ground that Place was not given leave of court to submit additional evidence.

Place timely appeals from the judgment entered following the trial court's order granting Dr. Bernstein's motion for summary judgment.

7

DISCUSSION

Place contends the trial court erred in granting the summary judgment motion because Dr. Kahn was qualified to testify, and Dr. Kahn's declarations established triable issues of material fact regarding Dr. Bernstein's breach of the duty of care and causation. More specifically, Place contends that Dr. Bernstein breached his duty of care when he (1) missed a potentially serious cardiac abnormality in the EKG before the AONR procedure; (2) failed to consult a cardiologist before the AONR procedure; and (3) based upon the abnormal EKG, failed to conduct further testing before performing the AONR procedure. Because Dr. Bernstein failed to meet the standard of care, Place maintains he suffered tachycardia following the AONR procedure.

1. *Governing Standards of Review*

We review the trial court's grant of summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860) (*Aguilar*). Summary judgment is proper when the evidence shows the nonexistence of a triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd.(c); *Aguilar*, *supra*, at p. 843.) To satisfy this burden, a defendant moving for summary judgment must establish that one or more of the elements of a cause of action cannot be established or that a complete defense exists to the cause of action. (Code Civ. Proc., § 437c, subd. (*o*); *Aguilar*, *supra*, at p. 850.) If the defendant meets this burden, the burden shifts to the plaintiff to show a triable issue of material fact exists as to either the particular cause of action or the proffered defense. (*Aguilar*, *supra*, at p. 850.)

In determining whether the parties have met their respective burdens, the court must consider all of the evidence, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment may not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by inferences or evidence, which raise a triable issue as to any material fact. (Code Civ. Proc., § 437c, subd. (c).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of

8

fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

" ' "California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." ' [Citation.]" (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123.)

In summary judgment proceedings, the weight of authority holds that appellate courts review evidentiary rulings under an abuse of discretion standard.[6] (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335.) A court's decision to exclude expert testimony is also reviewed for abuse of discretion. (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.) While the qualification of an expert witness requires the trial court to exercise its discretion, the court abuses its discretion by denying qualification if the witness demonstrates sufficient knowledge of the subject to entitle his or her opinion to go before the jury. (*Id.* at p. 472.)

2. *Dr. Bernstein's Expert Declaration Shifted the Burden*

Healthcare providers must exercise the degree of skill, knowledge, and care ordinarily possessed and exercised by members of their profession under similar circumstances. (*Powell v. Kleinman*, *supra*, 151 Cal.App.4th at p. 122.) In " ' "any medical malpractice action, the plaintiff must establish: '(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection

---

[6] If the trial court does not rule on evidentiary objections, we review de novo objections raised on appeal. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535.) In *Reid v. Google*, the Supreme Court left open the question of whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or de novo. (*Ibid.*)

9

between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' [Citation.]" ' [Citation.]" (*Ibid*.)

Dr. Bernstein moved for summary judgment on the grounds that Place could not establish a breach of duty or a causal connection between his treatment and Place's injury. To support his motion, Dr. Bernstein submitted expert testimony that the trial court concluded satisfied his burden. We agree with the trial court that the expert's declaration was sufficient to shift the burden to Place to raise a triable issue of fact.

### 3. *Place Met His Burden to Show Triable Issues of Fact Exist*

#### a. *Dr. Kahn is Qualified to Render an Opinion*

Place contends the trial court erred in concluding that Dr. Kahn's declarations lacked foundation because he was not an anesthesiologist, cardiologist, or experienced with the AONR procedure and therefore not qualified to testify on the standard of care to which Dr. Bernstein was held.[7] Place maintains the trial court misunderstood his case. His theory was that the applicable standard of care did not require specialized knowledge because Dr. Bernstein's alleged breach was the failure to read the baseline EKG before performing the AONR procedure.

"The rule that a trial court must liberally construe the evidence submitted in opposition to a summary judgment motion applies in ruling on both the admissibility of expert testimony and its sufficiency to create a triable issue of fact." (*Garrett v. Howmedica Osteonics Corp.*, *supra*, 214 Cal.App.4th at p. 189; see also *Powell v. Kleinman*, *supra*, 151 Cal.App.4th at pp. 125-126.)

---

[7] The supplemental declaration Place submitted addressed Dr. Kahn's familiarity with the AONR procedure and his training related to interpreting EKG studies. These omissions from Dr. Kahn's first declaration were pointed out during the hearing on the motion for summary judgment. Although the trial court did not give Place leave to submit a supplemental declaration, the court permitted additional briefing, which focused on the legal proposition that a generalist is qualified to render an opinion with a showing of practical knowledge. Dr. Kahn's qualification to render an opinion based on practical knowledge was a point clarified in the supplemental declaration. Thus, we conclude it was an abuse of discretion not to consider the supplemental declaration in ruling on the motion for summary judgment.

10

In a medical malpractice case, a person is qualified to testify if he or she has special knowledge, skill, experience, training, or education sufficient to qualify on the subject to which the testimony relates. (Evid. Code, § 720, subd. (a).) This special knowledge, skill, experience, training, or education may be shown by any otherwise admissible evidence. (Evid. Code, § 720, subd. (b).) An expert may base his or her opinion on any matter "that is of a type that reasonably may be relied upon by an expert in informing an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion." (Evid. Code, § 801, subd. (b).)

Citing *Miller v. Silver* (1986) 181 Cal.App.3d 652, Place maintains that reading and interpreting an EKG addresses a matter of shared medical ability or basic knowledge of all physicians, such as the role of prophylactic antibiotics for patients prior to surgery. (*Id*. at p. 661.) As far as this proposition goes, we agree that Dr. Kahn is qualified to testify as an expert if the standard of care is so broadly defined.

Here, however, the standard of care must be determined in the context of the decision to perform the AONR procedure. Therefore, the standard of care is gauged by what is usually and customarily done by physicians performing AONR procedures presented with a pre-procedure baseline EKG that was reported as "normal." (See *Sinz v. Owens* (1949) 33 Cal.2d 749, 753.) Liberally construing Dr. Kahn's declarations, while he had never actually performed the AONR procedure, he had practical knowledge that the AONR procedure was stressful on the heart. "Where a duly licensed and practicing physician has gained knowledge of the standard of care applicable to a specialty in which he is not directly engaged but as to which he has an opinion based on education, experience, observation or association with that specialty, his opinion is competent."[8]

---

[8] The *Evans* court further stated: "The reason for not requiring specialization in a certain field is obvious. Physicians are reluctant to testify against each other. [Citations.] Consequently, when an expert can be found, it is immaterial whether he is a general practitioner or a specialist providing he has knowledge of the standard of care in any given field; otherwise, the plaintiff could never prove a case against a specialist unless he

11

(*Evans v. Ohanesian*, *supra*, 39 Cal.App.3d at p. 128.)  Dr. Kahn had sufficient knowledge to opine on whether having been presented with Place's baseline EKG, even though reported as normal, the study was a contraindication for the AONR procedure or, at a minimum, required further patient evaluation before performing the procedure.  The degree of his knowledge goes more to the weight of the evidence than to its admissibility.  Thus, the trial court erred in concluding that Dr. Kahn was not qualified to testify as an expert.

b.  *Dr. Kahn Addresses Breach of Duty and Causation*

In a medical malpractice action, if a plaintiff establishes negligence he must prove the defendant's negligence was a cause-in-fact of the injury.  (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1118.)  " '[C]ausation must be proven within a reasonable medical probability based [on] competent expert testimony.  Mere possibility alone is insufficient to establish a prima facie case.' "  (*Ibid.*)

Dr. Kahn reviewed the EKG and medical records, as did the defense expert.  Dr. Kahn stated that Dr. Bernstein failed to read the EKG, and if he had, he would have discovered that the EKG reflected a potentially serious abnormality, which required further testing or a referral to a cardiologist before performing the AONR procedure.  Dr. Bernstein's treatment, therefore, constituted a breach of the standard of care.  "This is so because the AONR procedure is extremely stressful on the organs, including the heart, and therefore the pre-AONR procedure work up must be extremely cardio-protective."  Dr. Kahn's expert opinion establishes a triable issue of fact as to the issue of negligence.

The trial court, however, also concluded that as a matter of law, Place could not prevail because "no act or omission on behalf of Dr. Bernstein caused any injury to Plaintiff."  The defense expert stated the complications Place experienced were a known risk following the AONR procedure, which occurs in the absence of negligence.

---

had an expert of the particular specialty . . . ."  (*Evans v. Ohanesian*, *supra*, 39 Cal.App.3d at pp. 128-129.)

Dr. Bernstein, therefore, was not a proximate, legal, or substantial factor in causing the complications that Place experienced.

On the issue of causation, Dr. Kahn reached the opposite conclusion, that is, Dr. Bernstein's "failure to meet the standard of care caused Plaintiff's congestive heart failure." Because we concluded Dr. Kahn's declaration raises issues of fact with respect to whether Dr. Bernstein breached the standard of care, Dr. Kahn's opinion on causation is adequately supported.

Dr. Bernstein contends that Dr. Kahn's conclusion is not based upon a reasoned explanation, especially because he does not dispute that tachycardia is a known risk of the AONR procedure. The argument advanced is that Dr. Kahn's declaration, at most, showed an alternative treatment method when presented with Place's baseline EKG, and did not explain what treatment should have been given to avoid a known risk of the AONR procedure. Specifically, Dr. Bernstein argues that Dr. Kahn "needed to further show that what Dr. Bernstein did in his care for [Place] was something no other respected specialist would have done under same or similar circumstances, or that Dr. Bernstein failed to do something all reputable practitioners would have exclusively and uniformly done in this case." Dr. Bernstein overstates the necessary showing to oppose a summary judgment motion.

In *Powell v. Kleinman*, *supra*, 151 Cal.App.4th 112, the court reversed a summary judgment in favor of a defendant doctor in a malpractice case because the trial court erroneously excluded evidence from the plaintiff's expert's declaration opposing summary judgment. (*Id*. at pp. 127-128.) The court stated that while a defendant's expert's declaration has to be detailed and with foundation in order to obtain a summary judgment, a plaintiff's expert's declaration in opposition to a summary judgment motion does not have to be detailed and is entitled to all favorable inferences. (*Id*. at p. 125.) The court emphasized that "we liberally construe the declarations for the plaintiff's experts and resolve any doubt as to the propriety of granting the motion in favor of the plaintiff." (*Id*. at pp. 125-126.) In *Powell*, the plaintiff's expert "opined that it is medically probable [that defendant's] care and treatment caused [plaintiff] injury." (*Id*. at

13

p. 129.)  "However obtuse [the expert's] declaration may appear, as a party opposing summary judgment, [plaintiff] is entitled to *all favorable inferences* that reasonably may be derived from it, which includes a reading of the declaration to state that [plaintiff's] injuries were caused by [defendant's] conduct, which conduct fell below the applicable standard of care."  (*Ibid.*)

Recently, our division decided *Garrett v. Howmedica Osteonics Corp.*, *supra*, 214 Cal.App.4th 173, in which the plaintiff brought a products liability action against the supplier of a prosthetic bone.  We reversed summary judgment in favor of the defendant. The defendant argued that the plaintiff's expert declaration was not admissible because it lacked a reasoned analysis as he did not describe the testing methods used to reach his conclusion.  (*Id*. at 185.)  We acknowledged the court's gatekeeping responsibility for expert testimony as set forth by the Supreme Court in *Sargon Enterprises, Inc. v. University of Southern California*, *supra*, 55 Cal.4th at page 781.  (*Garrett v. Howmedica Osteonics Corp.*, *supra*, at pp. 186-187.)

Unlike *Sargon*, in which the trial court conducted an evidentiary hearing before excluding expert testimony, *Garrett* involved the exclusion of expert testimony presented in opposition to a summary judgment motion.  We concluded the absence of more specific information on the expert's testing methods did not justify the exclusion of his testimony on the grounds that his conclusions were speculative, conjectural, or lacked a reasonable basis.  (*Garrett v. Howmedica Osteonics Corp.*, *supra*, at pp. 187-189.)  In reaching this conclusion, we reiterated that "[i]n light of the rule of liberal construction, a reasoned explanation required in an expert declaration filed in opposition to a summary judgment motion need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial."  (*Id.* at pp. 183, 189.)

As in *Garrett*, we conclude the trial court failed to liberally construe the evidence submitted in opposition to the summary judgment motion.  Dr. Kahn not only concluded it was more probable than not that Dr. Bernstein's failure to read the EKG before performing the AONR procedure caused Place's cardiac event, but he also stated the failure to consult with a cardiologist or to conduct additional medical tests before

14

performing the AONR procedure was below the standard of care. Dr. Kahn's opinions should not have been omitted or deemed insufficient at the summary judgment stage.[9]

DISPOSITION

The judgment is reversed. Place is entitled to recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

CROSKEY, J.

---

[9]    We render no opinion on the merits or on evidentiary issues that might arise at trial.