648 So.2d 1081 (1994)
Harold FRASER
v.
OCHSNER FOUNDATION HOSPITAL, Ochsner Clinic and Dr. Edward Sauter.
No. 94-CA-380.
Court of Appeal of Louisiana, Fifth Circuit.
December 28, 1994.
Writ Denied March 17, 1995.
*1082 Gregory F. Gambel, New Orleans, for plaintiff/appellant.
Joseph P. Gordon, Jr., Arthur F. Hickham, Jr., Adams and Reese, New Orleans, for defendants/appellees.
Before GRISBAUM, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
In this medical malpractice action, plaintiff appeals the trial court judgment which found in favor of the defendants. For the following reasons, we affirm.

FACTS
On Monday, September 14, 1987, plaintiff, Harold Fraser, underwent quadruple coronary artery bypass surgery at Ochsner Foundation Hospital. Dr. John Ochsner successfully performed the surgery. Mr. Fraser's post-surgical care was provided by a team of doctors including Dr. Ochsner, Dr. Michael Horowitz (Chief Cardiovascular Resident), Dr. Mark Alkire (Junior Cardiovascular Resident), and Dr. Edward Sauter (General Surgery Resident).
On the evening of Wednesday, September 16, 1987, Mr. Fraser began having vision problems. The following day, Mr. Fraser informed Dr. Sauter of these problems. Dr. *1083 Sauter responded by having Mr. Fraser read an eye chart, which Mr. Fraser was able to do. Nevertheless, Mr. Fraser requested that an ophthalmologist examine his eyes, which Dr. Sauter did not feel was appropriate at that time. On Friday, September 18, 1987, Mr. Fraser expressed the same vision complaints to Dr. Sauter, who again had Mr. Fraser read the eye chart. Again, Dr. Sauter did not feel an ophthalmological consultation was appropriate.
On the morning of Saturday, September 19, 1987, Mr. Fraser's vision had significantly worsened, and he was referred to Dr. Sprague Eustis, an ophthalmologist in the Ochsner Clinic, who diagnosed Mr. Fraser with anterior ischemic optic neuropathy (AION), an irreversible condition which left Mr. Fraser with little to no peripheral vision.
On April 21, 1989, after having brought the matter before a medical review panel pursuant to LSA-R.S. 40:1299.47, Mr. Fraser filed suit in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, against Dr. Sauter, Ochsner Foundation Hospital and Ochsner Clinic. The lawsuit centered around Dr. Sauter's failure to have an ophthalmologist examine Mr. Fraser after his first complaint of vision problems. After a bench trial on the merits, the trial court ruled in favor of the defendants, finding that they did not lack the degree of knowledge or skill or fail to use reasonable care and diligence in the application of that skill in the treatment of Mr. Fraser. Mr. Fraser thereafter brought this appeal, asserting two assignments of error: 1) The trial court erred in holding that Dr. Edward Sauter did not violate the appropriate standard of care applicable to cardiovascular surgeons by failing to call an ophthalmology consult when Harold Fraser first began complaining of post-operative visual difficulties; and 2) The trial court erred in failing to permit an ophthalmologist to testify as to the standard of care that should have been applicable in the treatment of Harold Fraser as Dr. Sauter was treating not only a cardiovascular problem, but also an ophthalmological problem.
At the trial on the merits, Mr. Fraser testified as to the development and nature of his injury and his subsequent limitations. Mr. Fraser testified that the vision problem he began experiencing on the Wednesday after his surgery was in his peripheral field of vision, and he described it as a "fuzziness,... diffused with some small color bands." Mr. Fraser also described it as "like looking through little cotton balls." He discussed this problem with Dr. Sauter on the Thursday and Friday after his surgery. On both occasions, Dr. Sauter checked Mr. Fraser's vision by having him read a Snellen Eye Chart. While Mr. Fraser was able to read the chart both times, he requested that an ophthalmologist examine his eyes. On both occasions, Dr. Sauter felt that an ophthalmological consultation was not appropriate.
Mr. Fraser testified that early Saturday morning, he awoke to find that his peripheral vision was black; that he could not see out of the area which was previously fuzzy. He was sent to the ophthalmology section of Ochsner Clinic and seen by Dr. Sprague Eustis, who diagnosed him with bilateral anterior ischemic optic neuropathy (AION), a condition which is irreversible. At trial, Mr. Fraser demonstrated for the trial judge how much he could see in his peripheral field out of each eye, explaining that his left eye gave him little more than depth perception. Mr. Fraser also testified that prior to his surgery, he led an active life, and although he was still able to drive, his activities have now been limited.

ANALYSIS
As correctly noted by the trial court, LSA-R.S. 9:2794(A) is applicable to this case, and provides that in a medical malpractice action based on the negligence of a physician licensed under R.S. 37:1261, the plaintiff has the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily *1084 practiced by physicians ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
In Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1276 (La.1991), the Louisiana Supreme Court outlined the burden of proof and appellate standard of review as follows:
In a medical malpractice action against a physician, the plaintiff carries a two-fold burden of proof. The plaintiff must first establish by a preponderance of the evidence that the doctor's treatment fell below the ordinary standard of care expected of physicians in his medical specialty, and must then establish a causal relationship between the alleged negligent treatment and the injury sustained. LSA-R.S. 9:2794; Smith v. State through DHHR, 523 So.2d 815, 819 (La.1988); Hastings v. Baton Rouge General Hospital, 498 So.2d 713, 723 (La.1986). Resolution of each of these inquires are determinations of fact which should not be reversed on appeal absent manifest error. Housley v. Cerise, 579 So.2d 973 (La., 1991); Smith, 523 So.2d at 822; Rosell v. ESCO, 549 So.2d 840 (La.1989); Hastings, 498 So.2d at 720.
In rendering judgment, the trial court found that plaintiff failed to establish the threshhold burden of proving by a preponderance of the evidence that Dr. Sauter's treatment fell below the ordinary standard of care expected of physicians in his medical speciality. In its written reasons for judgment, which we find to be legally and factually sound, the trial court stated:
Counsel for both sides offered ample testimony to determine the standard of care, if it was breached and was there damage as a result of the breach. All three cardiovascular surgeons who were members of the medical review panel, testified as did Dr. John Ochsner, cardiovascular surgeon, Chairman Emeritus of Surgery at Ochsner, and by deposition, Dr. Mortimer Buckley, Chief of Cardiac Surgery at Massachusetts General Hospital.
This Court also took into consideration the testimony of ophthalmologists, Dr. Rizzo and Dr. Wall, by deposition, and Dr. Baxter who testified in person. However, this Court did not consider the standard of care of an ophthalmologist in this case to be the appropriate measure.
This Court considered the following as the degree of knowledge or skill ordinarily exercised by cardiovascular surgeons in this area in 1987:
1. Visual problems occurred in as many as 30% of all post-cardiopulmonary bypass surgery patients. These problems are usually transient and disappear shortly after surgery.
2. The Snellen Eye Chart test given by Dr. Sauter to Mr. Fraser was equal to, if not better than, the "numbers of fingers test" given by most other cardiovascular surgeons.
3. In 1987, AION, as a complication of cardiopulmonary bypass surgery, was not known to physicians practicing cardiovascular surgery.
4. Though low, the blood hematocrit and blood pressure levels of Mr. Fraser were such that cardiovascular surgeons would not have transfused Mr. Fraser any earlier than the defendants transfused him.
The law does not require perfection in medical diagnoses and treatment. On the contrary, a doctor's professional judgment and conduct must be evaluated in terms of reasonableness under the then existing circumstances, not in terms of results or in light of subsequent events. See Broadway v. St. Paul Insurance Co., 582 So.2d 1368 (La. App.2d Cir.1991) and the cases cited therein. As correctly noted by the trial court, the wealth of medical testimony at trial, given by properly qualified medical experts, revealed that 30% of all bypass patients experience vision problems, the vast majority of which are transient in nature. Medical testimony *1085 at trial also revealed that the rarity of AION in bypass patients made it an unknown complication of cardiopulmonary bypass surgery in 1987. Moreover, the medical testimony of both the cardiovascular surgeons and ophthalmologists revealed that, even today, the direct causes of AION are speculative, making AION unpreventable, and there is no proven treatment to reverse or reduce the damage caused by AION once diagnosed.
The only suggested treatment for Mr. Fraser's AION was offered by Dr. Robert Baxter, ophthalmologist, who testified that since AION is caused by a low hematocrit (red blood cell count) and/or blood pressure level, that a blood transfusion may have increased the oxygen-carrying capacity of Mr. Fraser's blood so that his injury would have been reduced. However, Dr. Buckley offered contradictory testimony at trial, stating that he believes that AION is caused by emboli (blood clots) rather than low hematocrit and/or blood pressure levels.
It is well settled that where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. See Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993) and the cases cited therein. Moreover, the evidence at trial revealed that Mr. Fraser was given a blood transfusion on Thursday, September 17th, about the time that he first complained to Dr. Sauter about vision problems. After a thorough review of all of the medical testimony and evidence offered at trial, we find that the trial court's determination that Dr. Sauter did not violate the appropriate standard of care by not calling an ophthalmology consult when Mr. Fraser first began complaining of post-operative visual difficulties, was not manifestly erroneous.
We find that appellant's second assignment or error, that the trial court should have allowed an ophthalmologist to testify as the appropriate standard of care, is likewise unmeritorious. As stated, the main issue in this lawsuit centered around Dr. Sauter's failure to have an ophthalmologist examine Mr. Fraser after his first complaint of vision problems.
Generally, where the alleged acts of negligence raise issues peculiar to the particular specialty involved, then only those qualified in that specialty may offer evidence of the applicable standards. La.R.S. 9:2794(A)(1). However, it is a specialist's knowledge of the requisite subject matter, rather than the specialty within which the specialist practices, which determines whether a specialist may testify as to the degree of care which should be exercised; a particular specialist's knowledge of the subject matter on which he is to offer expert testimony is determined on a case by case basis. Turner v. Massiah, 641 So.2d 610, 617 (La.App. 5th Cir.1994), citing McLean v. Hunter, 495 So.2d 1298 (La.1986) and Soteropulos v. Schmidt, 556 So.2d 276 (La.App. 4th Cir.1990).
In the matter before us, plaintiff offered no ophthalmologist who had knowledge of the requisite subject matter of cardiovascular medicine. Moreover, none of the ophthalmologists who testified at trial were able to offer any proven treatments which could have been used to reduce Mr. Fraser's injury if it would have been detected as soon as Mr. Fraser began experiencing vision problems.
It is well settled that if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Martin, supra at 1277. (citation omitted). After a thorough review of the entire record, we cannot say that the trial court's findings are manifestly erroneous. For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.