881 So.2d 1286 (2004)
Barbara B. GILLIAM and George R. Gilliam
v.
Lori L. PALAZZO, M.D.
No. 04-CA-241.
Court of Appeal of Louisiana, Fifth Circuit.
August 31, 2004.
Joel A. Levy, Marrero, LA, for Plaintiffs/Appellants.
Rodi W. Culotta, Angelle Schmidt Stuart, Mang, Batiza, Gaudin, Godofsky & Penzato, Metairie, LA, for Defendant/Appellee.
*1287 Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY, and JAMES C. GULOTTA, Pro Tempore.
JAMES C. GULOTTA, Judge, Pro Tempore.
Barbara B. Gilliam and George R. Gilliam, plaintiffs-appellants, appeal from the trial court's judgment in this medical malpractice case, dismissing their suit against defendant-appellee, Lori L. Palazzo, M.D. We affirm.
On Wednesday, October 1, 1997, 56-year-old Barbara Gilliam telephoned the office of her primary care physician, Dr. Lori Palazzo, to obtain an appointment. According to the telephone consultation memo, Mrs. Gilliam related that she had neck pain and "now" had a rash on the right side of her neck that did not itch, but hurt. The memo further indicated Mrs. Gilliam said that someone had told her she might have "shingles." Mrs. Gilliam was given an appointment for the following morning.
When Dr. Palazzo examined Mrs. Gilliam, she diagnosed Mrs. Gilliam with poison ivy, not shingles. Dr. Palazzo testified at trial that her progress notes indicated Mrs. Gilliam reported working in the garden for approximately four days. The progress notes also indicated that Mrs. Gilliam's neck pain was intermittent. Dr. Palazzo testified that a physical examination revealed scattered vesicles, or small blisters, in patches on Mrs. Gilliam's neck, upper chest, abdomen and arm. Dr. Palazzo gave Mrs. Gilliam a steroid injection, placed Mrs. Gilliam on oral steroids, topical steroid cream, and Zyrtec, an antihistamine to help with itching.
On Monday, October 6, 1997, Mrs. Gilliam telephoned Dr. Palazzo's office complaining of burning all over and spasms in her neck and right arm. She also related that she could not sleep. In response, Dr. Palazzo prescribed a sleeping pill and a muscle relaxant.
On Thursday, October 9, 1997, Mrs. Gilliam again telephoned Dr. Palazzo's office. According to the telephone consultation memo, Mrs. Gilliam related that she still had poison ivy and that she still oozed and itched. Dr. Palazzo recommended that Mrs. Gilliam consult a dermatologist and made arrangements for her to see Dr. Daniel Marshall, a board certified dermatologist.
When Dr. Marshall examined Mrs. Gilliam the following day, October 10, 1997, he diagnosed her with herpes zoster, also known as shingles. Dr. Marshall explained that the disease is caused by the varicella virus, which is the same virus that causes chicken pox. After a person has chicken pox, the virus remains dormant in the nerve root. When activated, the virus travels from the nerve root along the nerves. It appears in patches of blisters on the skin along the distribution of the nerves. Dr. Marshall further explained that the manifestation of the blisters is preceded by tingling or pain in the area where the blisters are about to appear.
According to Dr. Marshall, the blisters are typically seen in the chest or abdominal area, but Mrs. Gilliam's blisters were on her neck. Mrs. Gilliam also had a bacterial skin infection that was secondary to shingles. Mrs. Gilliam was treated by Dr. Marshall over the next several months. In November, Dr. Marshall prescribed medication for neuralgia, which is the pain resulting from shingles. By the last visit on January 26, 1998, Dr. Marshall noted that Mrs. Gilliam had sustained discoloration of the skin and had some scarring secondary to the infection. Mrs. Gilliam also was treated by Dr. Steven Atkins, a neurologist, for the post-herpetic neuralgia.
*1288 A medical review panel was convened and an opinion was rendered on November 18, 1999. Two of the panelists, Doctors Samuels and Alper, found that Dr. Palazzo breached the standard of care, but that there were no damages. One panel member, Dr. McCord, found the evidence did not show Dr. Palazzo failed to comply with the appropriate standard of care. On January 10, 2000, the Gilliams filed a petition for damages against Dr. Palazzo alleging that she negligently failed to diagnose Mrs. Gilliam's skin condition as shingles instead of poison ivy. The petition alleged that Dr. Palazzo's negligence caused Mrs. Gilliam's pain and permanent injuries, and both plaintiffs sought damages for loss of consortium and other damages.
The matter proceeded to a bench trial on August 13, 2003. After holding the matter open for the taking of depositions of experts, the trial judge rendered judgment, in extensive and well-written reasons, in favor of Dr. Palazzo on November 6, 2003, dismissing plaintiffs' suit. The trial judge concluded that Dr. Palazzo did not breach the standard of care for an internist and that the misdiagnosis did not cause any damages. He also properly concluded that the window of opportunity had closed for administering antiviral medication and that plaintiffs' argument in this respect was "mere conjecture." We agree.
The plaintiffs assign two errors for our review:
1. The trial court erred in finding that there was no malpractice.
2. The trial court erred in finding that the plaintiffs sustained no damages.
In Martin v. East Jefferson Gen. Hosp., 582 So.2d 1272, 1276 (La.1991), the Louisiana Supreme Court outlined the burden of proof and appellate standard of review as follows:
In a medical malpractice action against a physician, the plaintiff carries a two-fold burden of proof. The plaintiff must first establish by a preponderance of the evidence that the doctor's treatment fell below the ordinary standard of care expected of physicians in his medical specialty, and must then establish a causal relationship between the alleged negligent treatment and the injury sustained. LSA-R.S. 9:2794; Smith v. State through DHHR, 523 So.2d 815, 819 (La.1988); Hastings v. Baton Rouge General Hospital, 498 So.2d 713, 723 (La.1986). Resolution of each of these inquires are determinations of fact which should not be reversed on appeal absent manifest error. Housley v. Cerise, 579 So.2d 973 (La.1991); Smith, 523 So.2d at 822; Rosell v. ESCO, 549 So.2d 840 (La.1989); Hastings, 498 So.2d at 720.
The law does not require perfection in medical diagnosis and treatment. On the contrary, a doctor's professional judgment and conduct must be evaluated in terms of reasonableness under the then existing circumstances, not in terms of results or in light of subsequent events. Fraser v. Ochsner Foundation Hosp., 94-380, p. 7 (La.App. 5 Cir. 12/28/94), 648 So.2d 1081, 1084, writ denied, 95-101 (La.3/17/95), 651 So.2d 270.
In the present case, the expert testimony conflicted as to whether Dr. Palazzo breached the standard of care by failing to diagnose Mrs. Gilliam with shingles. At trial, Dr. Palazzo was accepted as an expert in internal medicine. Dr. Palazzo explained that she diagnosed Mrs. Gilliam with poison ivy instead of shingles based on several factors. First, Mrs. Gilliam presented with a history of working in the yard. Second, she had a rash and pain at the same time, while the pain precedes the rash by days or even weeks in a patient with shingles. Further, Dr. Palazzo explained *1289 that patients with shingles are usually so incapacitated by the pain that they come into the office right away, while Mrs. Gilliam's pain was intermittent. Also, Dr. Palazzo saw only a few scattered blisters in different areas of Mrs. Gilliam's body, which was not the typical presentation of shingles.
Dr. Marshall testified that, when he saw Mrs. Gilliam on October 9, 1997, eight days after she first saw Dr. Palazzo, the disease was in a "classic" presentation in that the blisters were unilateral on the right side and followed the dermatome distribution. Dr. Marshall acknowledged that shingles is usually seen on the chest or abdominal area, while the disease was on Mrs. Gilliam's neck. While Dr. Marshall testified he had no difficulty in making the diagnosis, he did not believe Dr. Palazzo had breached the standard of care based on "what she saw and what she thought she was treating."
The deposition testimony of the medical review panelists and of Dr. Marshall was submitted to the trial court after the trial. Both Doctors Samuels and Alper testified that Dr. Palazzo should have diagnosed Mrs. Gilliam's condition to be shingles. However, Dr. Alper did not believe that the misdiagnosis had done any "harm" to Mrs. Gilliam. Dr. Alper explained that antiviral medication to treat shingles should be given within 72 hours. Dr. Samuels believed that the best time to give the antiviral medication is before the rash appears or when the patient has one or two blisters. Both doctors agreed that the effectiveness of the medication is speculative when administered beyond the 72-hour window. Dr. Samuels opined the medication would have had "little effect" on Mrs. Gilliam's condition, because of the amount of time that had passed when Mrs. Gilliam saw Dr. Palazzo.
The third panelist, Dr. McCord, testified that the evidence did not support a finding that Dr. Palazzo breached the standard of care. According to Dr. McCord, it is not uncommon to miss the diagnosis of shingles because the disease manifests itself in a variety of ways. Dr. McCord agreed that a diagnosis of poison ivy was reasonable in a patient who presented with Mrs. Gilliam's history and whose blisters were on both sides. Moreover, Dr. McCord believed that the outcome of Mrs. Gilliam's condition would have been the same even if the antiviral medication had been administered.
Where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is the most credible. Theriot v. Lasseigne, 93-2661, p. 9 (La.7/5/94), 640 So.2d 1305, 1313. Further, where the trial court's findings are reasonable in light of the record, the court of appeal may not reverse. From our consideration of this record, we conclude that the trial judge properly dismissed plaintiffs' suit.
Accordingly, we affirm the trial court's judgment. Costs for this appeal are to be paid by plaintiffs-appellants.
AFFIRMED.