## DIXIE HOMESTEAD ASS'N v. INTRAVIA.*
### No. 14125.

Court of Appeal of Louisiana. Orleans.
Jan. 30, 1933.

---

*Rehearing denied February 27, 1933.

Bertrand I. Cahn and John Wingrave, both of New Orleans, for appellant.

J. J. Landry and Geo. Montgomery, both of New Orleans, for appellee.

HIGGINS, J.

Plaintiff sues the defendant to recover the sum of $1,160, alleged to represent the amount due on sixteen rent notes, four for the sum of $65 each and twelve for the sum of $75 each, together with 8 per cent. interest per annum from June 1, 1930, until paid and 10 per cent. attorneys' fees. The petition alleges that the lease was entered into on October 4, 1929, for a period of twenty-four months, commencing on October 1, 1929, and ending on September 30, 1931; that defendant paid the first eight notes of the series, but failed to pay the remaining notes, having abandoned the premises some time after August 1, 1930; that the lease contained a provision that failure to pay any of the notes promptly after maturity would cause the remaining notes covering the unexpired period of the lease to become due and payable.

Defendant admits signing the lease, the terms and conditions thereof, but avers that the leased premises, 5508–10 Magazine street were about one block away from the Arabella Street Car Barn (one of the largest in the city) of the New Orleans Public Service, Inc.; that the premises were rented for the purpose of conducting a vegetable stand and retail grocery; that the plaintiff, as owner and lessor, knew that the patrons of defendant's business consisted of those who belonged to the Street Car Men's Union, their relatives and friends; that defendant had built up a lucrative business among the working class of people upon whom his business was solely dependent and that plaintiff was well aware of that fact; that on July 2, 1929, the Street Car Men's Union declared a strike against the New Orleans Public Service, Inc.; that during January, 1930, plaintiff, against the protest of the defendant, rented the upstairs part of the premises in which he was conducting his business to strike breakers who were replacing the union men in their employment with the New Orleans Public Service, Inc.; that the strike breakers moved out of the premises, but again against the protest of defendant the plaintiff rented the upper part of the premises to strike breakers; that, as a result of the strike breakers occupying the premises, the Street Car Men's Union boycotted the whole building, not because of any personal feeling against the defendant, but solely and only because the strike breakers were housed in the upper part of the building; that defendant attempted by amicable means to have the union lift the boycott, but was told by the officers of the union that it would be impossible until such time as the strike breakers moved out of the building; that, as a result of the boycotting of the building, defendant's business, which was dependent upon the laboring class, and particularly the union men, was ruined; that defendant communicated these facts and circumstances to the plaintiff and requested that the strike breakers be dispossessed; that plaintiff refused to do so; and that his conduct in that respect was a violation of the principles of law and equity controlling leases in this state as well as the terms and provisions of the lease requiring the landlord to maintain the premises in a condition to serve the use for which they were hired and to keep the tenant in undisturbed possession thereof. Defendant reserved his right to sue the plaintiff for such damages as he may have suffered from the said breach of the lease.

Plaintiff took a rule to show cause why there should not be judgment in his favor on the face of the petition, and the judge denied the same. When the case was called for trial on the merits, the plaintiff filed in evidence the lease and rent notes and then rested. Counsel for defendant produced in court several witnesses, including the defendant, who were placed on the stand for the purpose of proving the averments of the answer. Counsel for plaintiff objected to the defendant and his witnesses testifying as to the facts set forth in the answer on the ground that the defense was frivolous and without any foundation in law because, conceding that all the facts in the answer had been proven, the plaintiff would still be entitled to recover. The court sustained the objection and refused to permit the witnesses to testify.

The judge then rendered judgment in favor of plaintiff as prayed for subject to a credit of $720 for rent which it was admitted had been collected by the plaintiff who rented the premises to a third party for twelve months at $60 per month, in order to minimize the damages.

Defendant contends that the provisions of article 2692 of the Revised Civil Code are applicable, and that the plaintiff has violated the rights granted to defendant as lessee thereunder. This article of the Code reads:

"*Obligations of Lessor.* The lessor is bound from the very nature of the contract, and without any clause to that effect:

"1. To deliver the thing leased to the lessee.

"2. To maintain the thing in a condition such as to serve for the use for which it is hired.

"3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease."

Defendant argues that by placing the strike breakers in the building plaintiff has failed to "maintain the thing (premises) in a condition such as to serve for the use for which it

is (was) hired," and also has failed "to cause the lessee to be in peaceable possession of the thing (premises) during the continuance of the lease." In support of this argument, defendant has referred us to the case of Gayle v. Auto-Lec Stores, 174 La. 1043, 142 So. 258, 259; Keenan v. Flanigan, 157 La. 749, 103 So. 30, 31, 38 A. L. R. 248; Keenan v. Legardeur, 5 La. App. 266.

In the first case the lessor sued the lessee for the balance of the rent for the unexpired portion of the lease. Defendant pleaded a breach of the lease by the plaintiff in failing to maintain the defendant in peaceful and quiet enjoyment of the leased premises and in permitting the premises to become wholly unfit for the carrying on of defendant's business because plaintiff had rented the upper floor of the building to a dancing school which taught all kinds of dancing and because of the noise, jarring, and shaking of the building the premises were unfit for the retail automobile accessory business. The court said: "The facts of this case, we think, bring it within the doctrine announced in Keenan v. Flanigan, 157 La. 749, 103 So. 30 [38 A. L. R. 248], interpreting articles 2692 and 2703 of the Civil Code relative to the obligations of the lessor to maintain the property in such condition as to serve the purpose or use for which it is leased, and to maintain the lessee in the peaceable possession of the premises during the term of the lease." The court sustained the defense and dismissed plaintiff's suit.

In the second case, the plaintiff sued the defendant for the balance of the rent on the unexpired portion of the lease, alleging that defendant had failed to pay the rent and had abandoned the premises. Defendant answered averring that he had rented the upper apartment as a dwelling, and that the landlord rented the lower apartment to tenants who regularly played their Victrola from 8 o'clock at night to 2 or 3 o'clock in the morning, while drunken merrymakers indulged in loud and obscene language for a period of nearly four months, preventing the defendant and his family from sleeping at night, and that the landlord had failed, in accordance with article 2692 of the Revised Civil Code, to maintain the property in such a condition as to serve for the use for which it was rented and to keep the lessee in peaceful possession. The court held that the nuisance in the lower apartment was of such a nature as to justify the defendant in moving out of the apartment, because the landlord, after being notified, had failed to maintain the property in a condition to serve the use for which it was leased, and to keep the defendant in peaceful possession thereof.

In the third case the landlord sued the tenant for rent covering the unexpired portion of the lease. The defendant averred that he was justified in moving out of the lower apartment because the plaintiff had rented the upper apartment to tenants who conducted a noisy and disorderly house, where loud and obscene language was used and drunken parties conducted. The court referred with approval to the case of Keenan v. Flanigan, supra, but found that the defendant had failed to prove the averments of his answer, as there had only been one disturbance, which was not sufficient in the opinion of the court to justify the defendant in abandoning the premises.

It is to be noted that in all of the above cases the disturbance was on the property and was caused by one of the tenants in the leased premises. There was a direct contractual relation between the offending party and the landlord, thus giving him some control over the wrongdoer. A careful reading of defendant's answer, however, fails to reveal any averments that the strike breakers (the tenants), who were housed in the upper part of the building, were guilty of any disorderly conduct or disturbance whatsoever. The answer does not even state that because of the presence of the strike breakers in the building the union men or their sympathizers caused any disturbance in the premises or the vicinity thereof, or caused the defendant, his family and patrons, any inconvenience or hazard. The defendant's defense is that he was justified in abandoning the premises because the plaintiff knew that he was operating a retail grocery business and had to depend upon the union men, their families and friends, for patronage, and that, as a result of allowing the strike breakers to occupy the upper part of the building, the union boycotted the place, causing his customers to trade elsewhere. The union did not boycott the property because the landlord failed to maintain it in such a condition as to serve for the use for which it was leased or because of any misconduct or disturbance by the strike breakers which interfered with the peaceful possession by the lessee, his family, or his customers. The union men boycotted the building because of the personal feeling against the strike breakers that arose out of the strike, a matter wholly dissociated with the leasing of the building.

Conceding that the union had a right to boycott the property and have its members withdraw and withhold their patronage from defendant's store on account of the presence of the strike breakers, nevertheless, the owner likewise had legal right to rent the upper apartment to any one so long as they used the premises lawfully and in such a manner as not to interfere with the use and peaceful possession of the other part of the building by the other tenant. If the strike breakers had caused any disturbance in the building or if their presence therein had caused the union men and their friends to congregate there and result in a disturbance of defend-

ant's peaceful possession and his use of the place, then an entirely different question would have been presented, but the answer fails to make any such charges.

Article 2703 of the Revised Civil Code provides: "*Disturbances by Trespassers.* The lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises; but in that case the lessee has a right of action for damages sustained against the person occasioning such disturbance."

In the case of Keenan v. Flanigan, supra, the Supreme Court, in interpreting that article, said: "What it means is that a lessor is not bound to warrant his lessee against a disturbance caused by a person who does not claim, under covenant with the lessor, a right to be in a position to carry on the disturbance; e. g., a lessor is not responsible for a disturbance inflicted upon his lessee by a trespasser."

Here the union was acting as a third person wholly unrelated to the plaintiff as owner of the property.

We therefore conclude, as did the trial judge, that, even if the defendant had been permitted to prove the averments of his answer and had successfully done so, he would not have established a legal defense.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.