662 So.2d 480 (1995)
Preston VERRET
v.
TONTI MANAGEMENT CORPORATION.
No. 95-CA-158.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 1995.
Rehearing Denied November 17, 1995.
*481 Jason W. Robideaux, Lafayette, for plaintiff-appellant.
Jack E. Truitt, James A. Williams, Metairie, for defendant-appellee.
Before BOWES, GRISBAUM and WICKER, JJ.
GRISBAUM, Judge.
This appeal relates to a personal injury action. The plaintiff was a lessee of defendant, Tonti Management Corporation who suffered personal injuries which were inflicted upon him by another Tonti resident. A jury verdict found no negligence on the part of Tonti from which plaintiff appeals. We affirm.

BASIC RECORD FACTS
This litigation arose from an incident which occurred on December 22, 1991. Preston Verret, a resident of Sunlake Apartments in Kenner, was severely beaten by another tenant, Grant Gunderson, as he exited a taxicab. The attack occurred within the apartment *482 complex in the parking lot-common ground area outside of the Verret's building. Sunlake Apartment complex is owned and managed by Tonti Management Corporation.
Verret filed suit against Tonti Management Corporation alleging the attack was caused "solely by the negligence and omissions and breach of duty by defendant and its agents." His petition was amended to include a contractual claim. Verret claimed defendant and its security guards failed to take those steps necessary to remove the assailant from attacking him by failing to summon the police in a timely fashion.
One of the witnesses who testified surrounding the events of December 22, 1991, was Kerri Smith. Smith testified she was present at Sunlake Apartments visiting her friend, Michael Pradat, along with Chad Pradat and Brandon Boyland. Smith testified Grant Gunderson showed up at Pradat's apartment around 9:00 p.m., in a drunken and argumentative state. Gunderson was asked to leave the apartment, whereupon he went outside and began punching at trees in the parking lot.
Because she was concerned Gunderson might harm her car, Smith went outside to move it and was eventually followed by the others. According to Smith, Gunderson tried to pick a fight with Boylan and Michael and Chad Pradat. Eventually, Gunderson and Chad Pradat started wrestling on the ground. Smith described the wrestling match as a physical fight, which was definitely not horseplay, since the two men were not getting along at that point.
Smith testified she saw a security guard approach the scene as she watched the fight from more than twenty feet away. Although she did not hear everything he said, she did hear the guard say several times to break it up or he would call the police. Smith testified the guard did not get very close to the fight. Smith stated the guard appeared to be working for Tonti.
Pradat and Gunderson stopped fighting, and the group eventually dispersed. Later that night, sometime after midnight, Smith heard a car pull up and looked outside of the second story window. She observed a man (Verret) getting out of a taxicab, who suddenly was attacked by Gunderson. Gunderson approached Verret screaming and demanding money. Before Verret could react, Gunderson started to beat and kick him. Smith estimated the beating lasted about five minutes. Smith testified the beating ceased when Gunderson ran off and Verret crawled to his third floor apartment and summoned an ambulance, which arrived minutes later.
Brandon Boyland also testified regarding the incident. Boyland confirmed Gunderson was at Pradat's apartment earlier and was intoxicated and argumentative. Boylan testified Gunderson displayed a violent temper that night. Boylan also described the earlier fight between Gunderson and Pradat as a true, physical fight, not a friendly wrestling match. However, Boylan testified he did not see a security guard approach and break up the fight. He stated he was standing about five feet away from Pradat and Gunderson and his attention was more focused on them since Gunderson had tried to instigate a fight between them all.
Later that night Boylan claimed he witnessed the beating of Verret. He testified he wanted to call the police but Michael Pradat objected because he feared repercussions due to Gunderson's reputation as a drug dealer.
Preston Verret's description of the incident was the same as Smith's and Boylan's. He stated as he exited a taxicab in front of his building, he was confronted by a stranger who demanded money. When he did not give the man any money, the beating started and abruptly ended several minutes later. As a result of the beating, Verret suffered crushed bones in his face and skull which required surgical repair.
Verret testified he moved into the Sunlake complex in the fall of 1989. He stated his previous apartment was not a good place to live and was attracted to Sunlake because, "It was clean, well-lighted, there was a security guard on the premises, it was reasonably priced."
When he moved into Sunlake, he was given a key tag, which was a permit to the facilities. *483 He was told to keep the tag with him as identification when using the pool, tennis courts, and exercise rooms. Verret testified he was told the security guards had the right to challenge anyone who was on Sunlake property and force them to leave if they were not a resident.
Sandra Thomas, the manager of Sunlake Apartments, testified Sunlake did have a security guard hired by Tonti. However, his only purpose was to walk the property and check the physical plant. Thomas stated if a guard encountered someone on Tonti property without a proper pass, they were asked to leave. Thomas explained this was to insure Tonti residents had space to use the facilities, and to protect the property from being damaged or vandalized.
Thomas stated Tonti Management does not provide security for its tenants, and that the tenants are told there is no security. The lease states the security guard is there to protect the physical plant only. Thomas described the proper course of action for a security guard if he witnesses a fight is to call the police.
Philip Giorello, a Kenner policeman who responded to the December 22, 1991 incident, testified he was not aware of any prior robberies at Sunlake Apartments. Giorello stated he Kenner Police Department would routinely patrol the driveways of Sunlake Apartments checking the cars, etc.
After a jury trial on July 12-14, 1994, the jury returned a verdict in favor of Tonti Management. After the reading of the verdict, plaintiff made an oral motion for judgment notwithstanding the verdict which was denied. The trial court adopted the finding of the jury and signed a judgment on September 1, 1994.

ISSUES
We are called upon to determine a number of specific questions.
1. Whether the trial court gave jury instructions which were confusing and erroneous warranting a de novo review:
2. Finding a de novo review mandated, we must then necessarily determine whether the lessees injuries were caused by the negligence of Tonti in that there was a duty owed which was breached by Tonti and secondly, whether Tonti, lessor, breached his obligations as defined under La. C.C. 2692(3), which bonds the lessor to cause a lessee to remain in peaceable possession.

ERRONEOUS JURY CHARGES
Our jurisprudence tells us that the adequacy of jury instructions given by a trial court must be determined in light of the jury instructions as a whole. Furthermore, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on law and facts. Thus, on appellate review of a jury trial the mere discovery of an error in the judge's instructions does not of itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstance of the case. Jones v. Liberty Mutual Ins. Co., 568 So.2d 1091, 1094 (La.App. 5 Cir.1990), writ denied 572 So.2d 72 (La.1990).
The pertinent question involved in deciding whether reversible error had occurred is whether the jury was misled to such an extent as to prevent it from doing justice. Cuccia v. Cabrejo, 429 So.2d 232 (La.App. 5 Cir.1983), writ denied 434 So.2d 1097 (La.1983). Appellant complains the trial court erred in characterizing the assailant/tenant, Grant Gunderson, as a "third party with no right to the premises", which led to the erroneous charge to the jury under La.C.C. art. 2703. The relevant portion of the trial court's jury charge reads:
"This is a lawsuit filed by a lessee, Preston Verret, against his lessor, Tonti Management Corporation, as a result of injuries sustained on Tonti's property. These injuries were criminally inflicted upon Mr. Verret by a third person, Grant Gunderson.
Generally, there is no duty to protect others from the criminal activities of third persons."
Our statutory scheme in our civil code art. 2703 provides, "The lessor is not bound to guarantee the lessee against disturbances *484 caused by persons not claiming any right to the premises; but in that case the lessee has a right of action for damages sustained against the person occasioning such disturbance." Appellants argue Gunderson should not be considered a third person simply because he was a tenant with a right to be on the property. We agree.
A review of the pertinent jurisprudence of this court shows in Credithrift of America, Inc. v. Sinclair, 430 So.2d 822 (La.App. 5 Cir.1983):
"LSA-C.C. art. 2692, as stated earlier, requires the lessor to, inter alia, cause the lessee to be in peaceful possession during the lease term. A breach of that duty has been found where an adjacent tenant's activities disturbed the peace of the complainant... A distinction is, however, made between tenants over whom the lessor has control and those disturbances made by third persons over whom the lessor has no control, i.e. a trespasser. Dixie Homestead Assn v. Intravia, 145 So. 561 (App.Orl.1933); Keenan v. Flanigan, 157 La. 749, 103 So. 30 (1925). In the latter instance, the lessee's remedy falls under LSA-C.C. Art. 2703 and is against the third party causing the disturbance." (emphasis added) (Citations omitted)
Moreover, we see in Boteler v. Lake Management, Inc., 628 So.2d 86 (La.App. 5 Cir. 1993), where a tenant brought an action against her landlord for negligently providing security to tenants, alleging a second tenant had murdered her son in the parking lot of the apartment complex. This Court held La.C.C. art. 2703 was inapplicable since the murder was committed by a resident of the complex and not by a third person with no right to the premises. We held the rights and obligations of the lessor and lessee in that case were defined under La.C.C. art. 2692(3) which binds a lessor to cause a lessee to remain in peaceable possession.
Here, the jury was also charged according to La.C.C. 2692. However, because Gunderson was a tenant, the charge regarding La.C.C. 2703 was erroneous and not applicable. Commonsensibly, we conclude the jury was misled by the trial court's reference to Gunderson as a third party, which was followed by the instruction that generally there is no duty to protect others from the criminal activities of third persons. Importantly, not only did the trial court confuse the jury by calling Gunderson a third party, it made an "impermissible" comment on the evidence. In that Louisiana Code of Civil Procedure article 1791 prohibits a judge from commenting on the facts of the case. Here, the trial judge erroneously commented on the facts by his characterization of Gunderson as a third party.
We are ever mindful that appellate courts must exercise great restraint before overturning a jury verdict on the suggestion the instructions are so erroneous as to be prejudicial. Cuccia v. Cabrejo, supra. However, when the jury is given an incorrect instruction in law, the appellate court must make an independent review of the record before it can decide which party should prevail by a preponderance of the evidence. The manifest error standard of review is not applicable when the jury verdict is tainted by error. McLean v. Hunter, 495 So.2d 1298 (La.1986), rehearing denied, on remand, 510 So.2d 771, writ. denied, 513 So.2d 1206. Given the jury charges taken as a whole, it is our opinion even though the jury was charged with the appropriate law, the inappropriate charge poisoned the outcome with improper law and factual statements. Ergo, we overturn the jury verdict and proceed with a de novo review.

DE NOVO REVIEW
In Verret's Original and Amending Petition, he stated two causes of action. The first cause of action was in negligence, where Verret claimed his injuries were caused by the negligence, and breach of duty by Tonti. Verret also set forth a contractual claim, asserting Tonti breached its obligation as a lessor, as defined under La.C.C. art. 2692(3), which binds a lessor to cause a lessee to remain in peaceable possession.
Regarding the negligence claim, the threshold issue is whether Tonti owed a duty to Verret. The Fourth Circuit wrote in Cornelius v. Housing Authority of New Orleans, *485 539 So.2d 1250 (La.App. 4 Cir.1989), writ denied, 544 So.2d 404 (La.1989):
"... unless there is some special relationship existing between the landlord and tenant, or where the landlord had assumed an implied or express obligation to provide security to the tenant and breached that duty, the landlord/lessor has no duty to protect his tenant from harm sustained as a result of acts of third parties." (Citation omitted)
After reviewing the evidence and testimony presented, we see Verret claims Tonti did assume a duty to protect based Tonti's issuance of identification tags and the presence of a security guard. Verret testified it was his understanding that Tonti's security guards had the authority to challenge anyone on Tonti's property and if someone could not produce the proper identification, that person would be told to leave the premises by the guard.
Jamie Fruge, a former co-worker of Verret and a Sunlake resident, testified because the security guards checked people they had not seen regularly, he thought the guards were there for personal protection. Fruge claimed when he rented his Sunlake apartment, he was told the security guard were on the premises at all times. However, on cross-examination he admitted he was told police protection was provided by local law enforcement.
Sandra Thomas, the Sunlake manager, explained that although Tonti did employ security guards at Sunlake, their purpose was to walk the property and check the physical plant only. As for challenging people to produce proof of residency, that was to insure Sunlake residents would have space to use the facilities, and prevent Sunlake property from being damaged. Thomas stated Tonti Management did not provide security for its tenants, and that tenants are informed of that fact. Thomas testified that the proper procedure for a security guard who witnesses a fight in the apartment complex would be to call the police.
This is where Verret seems to assert Tonti breached its duty. Verret attempts to show that a Tonti security guard allegedly witnessed the earlier fight between Gunderson and Pradat and did not call the police like he was supposed to do. Verret claims had the guard done his duty, Gunderson would not have attacked him later that night.
Importantly, we find that Verret did not prove a Tonti security guard was present at the earlier fight. Although Kerri Smith testified a Tonti guard dispersed the men from fighting, Brandon Boylan testified he never saw a security guard. By this self evident conflict, we cannot say that a preponderance of the evidence demonstrates that a Tonti guard was on the scene of the earlier fight. Moreover, there is no evidence to suggest at the time of the beating of Verret, a Tonti guard was anywhere around.[1] Therefore, we find a lack of evidence that the Tonti guard breached a duty to call the police at any time during the night of December 22, 1991.
Finally, Verret alleges Tonti breached its obligation as a lessor as defined under La.C.C. 2692(3), which binds a lessor to cause a lessee to remain in peaceable possession.
Our jurisprudence tells us that a lessor who allows one of his lessees to disturb the possession of another lessee had breached the obligation of causing the lessee to remain in peaceable possession of the thing. See Credithrift of America, Inc. v. Sinclair, supra; Gayle v. Auto-Lec Stores, 174 La. 1044, 142 So. 258 (1932). We recognize that the cited cases did not involve one tenant committing a violent act upon another; however, it was shown in both cases, the lessor "allowed" one tenant to participate in an act which disturbed another's peaceable possession.[2]
*486 Thus, we must now examine the evidence for anything indicating Tonti "allowed" Gunderson to brutally attack Verret, and disturb his peaceable possession.
Prior to this engagement, we find the liability portion of Verret's lease agreement null and void under La.C.C. 2004. The relevant section of the lease agreement provides:
"The lessor shall not be liable to the lessee, or to lessee's employees, patrons, and visitors, or to any other person for any damage to person or property caused by an act, omission or neglect of lessee or any other tenant of said demised premises ..."
La.C.C. Article 2004 clearly states:
"Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party.
Any clause is null that, in advance, excludes or limits the liability of one party for causing physical injury to the other party."
Ergo, this clause is null and accordingly unenforceable insofar as they, in advance, exclude liability for physical injury.
Now we return to our examination of the evidence for anything indicating Tonti allowed Gunderson to brutally attack Verret and disturb his peaceable possession. The record does not reflect anyone affiliated with Tonti knew that Gunderson presented a threat due to his violent disposition. Moreover, the testimony of the Kenner Police Officer who responded to Verret's call indicated Sunlake did not have a history of robberies or violent crime. Furthermore, there is no evidence to indicate that while Gunderson beat Verret, no one informed Tonti of the disturbance, nor did Tonti's security guard discover it and fail to act. Based on the foregoing, there is no evidence to suggest Tonti had any indication that Gunderson would attack Verret. Every witness who saw the incident, along with Verret himself, indicated the beating was entirely unexpected and without provocation. Therefore, we do not find Tonti did anything to allow Verret's peaceable possession to be disturbed. Accordingly, we cannot hold Tonti liable for the unforeseeable acts of Gunderson against Verret.
For the reasons assigned, the judgment of the trial court is hereby affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.
NOTES
[1] The security guard on duty that night was never called as a witness, and it appears his identity is uncertain. Also, it must be kept in mind that the Sunlake complex is a large complex and the absence of a security guard from a particular location does not in and of itself prove a breach of duty.
[2] In Boteler v. Lake Management, supra., this Court encountered an action by a tenant against a landlord for negligently providing security to tenants when a second tenant murdered the plaintiff's son in the complex parking lot. We held the rights and obligations of lessor and lessee in that case were defined under La.C.C. art. 2692(3), which binds a lessor to cause a lessee to remain in peaceable possession.