526 So.2d 1239 (1988)
Robert BAUGH, Jr., et al., Plaintiffs-Appellants,
v.
GULF AIR TRANSPORT, INC., et al., Defendants-Appellees.
No. 87-181.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1988.
Lawrence N. Curtis, Lafayette, for plaintiffs-appellants.
Jeansonne & Briney, Helen C. Johnson, Lafayette, for intervenor-appellee.
Voorhies & Labbe, James P. Lambert, John C. Jones, Andrus, Preis & Kraft, Susan Daigle, Gregory J. Laborde, Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, P.A., Arthur Robison, Lafayette, for defendants-appellees.
Before DOMENGEAUX, STOKER and YELVERTON, JJ.
YELVERTON, Judge.
In this personal injury suit following a two-vehicle accident, a jury found in favor of the defendant driver and dismissed the suit brought by Robert Baugh, the plaintiff. Baugh appeals claiming two evidentiary rulings by the trial judge were reversibly wrong. The rulings: (1) the judge refused to allow an expert for plaintiff to use a computer generated display to illustrate and explain his testimony about how the accident happened, and (2) the judge let a stipulation be read to the jury regarding benefits received by plaintiff from a collateral source. We affirm.
The litigation concerns an accident that happened on Sunday, May 2, 1982, at 12:30 P.M., in Broussard, Lafayette Parish, Louisiana. Robert Baugh was driving a 1982 Ford truck west on West Madison Street, and Aubrey Vidrine was driving a 1978 Mercury car East on the same street. A collision occurred in an intersection, the point of impact being the left front of each vehicle. Baugh, the plaintiff, was in the process of turning left at that intersection.
*1240 Alleging that Vidrine was on the job for Gulf Air Transport, Inc., Baugh sued Gulf as Vidrine's employer, and its insurer, Commercial Union Assurance Company. Baugh also named as defendants National Union Fire Insurance Company as the uninsured motorist insurer of his own vehicle, and Home Indemnity Company as the liability insurer for G.B. "Boots" Smith, Inc., the owner of the vehicle being driven by Vidrine.
National Union was a party to the litigation in two capacities. In addition to being a defendant as the uninsured motorist carrier covering Baugh's own vehicle, it was also the worker's compensation insurer of Baugh's employer (Baugh was on the job at the time of the accident). National Union intervened for recovery of the worker's compensation and medical expenses it had paid.
A jury returned a nine to three verdict against the plaintiff. The jury answered the threshold interrogatory on the verdict form as to Vidrine's fault, finding that Vidrine, the defendant driver, was not at fault in the case.
ASSIGNMENT OF ERROR NO. 1
Only the two drivers witnessed the collision and Baugh, the plaintiff, could not remember much. He testified that on the day of the accident he stopped at an intersection on West Madison Avenue to allow a vehicle to cross the intersection, that it was his intention to make a left turn at the intersection, and that he remembered nothing about what happened thereafter until after the accident was over. The defendant driver, Vidrine, testified that he saw plaintiff start turning left in a pickup truck in front of him, and that he threw on the brakes of his car but was unable to stop before the vehicles came together. The police officer investigating the accident testified that the plaintiff appeared unhurt at the scene, and that he told the officer he did not see Vidrine's car because the sun must have been in his eyes. All witnesses who gathered at the scene of the accident after it happened testified that the vehicles were situated in Vidrine's lane of traffic.
After the jury was selected and just before the trial was to begin there was a colloquy between the trial judge and counsel regarding the testimony of Steven Killingsworth, a mechanical engineer offered by plaintiff as an accident reconstruction expert. The defendants complained that it had just come to their attention that this expert was going to use a display generated on a computer screen, in connection with his testimony, to let the jury know how his reconstruction of the accident showed it was Vidrine's fault. Defense counsel complained that repeated earlier attempts to depose Killingsworth had been thwarted by the witness' failure to respond to deposition subpoenas, and that their belated discovery that he was going to use a computer's help in his testimony came as a surprise. They urged that notice had not been given of the intention to use a computer on the required pre-trial list of witnesses and exhibits, that they had not had time to prepare their defense to such a presentation, and that its use in view of their lack of preparation would be prejudicial. They objected to the use of a computer in this way.
Counsel for plaintiff responded to the objection by arguing that the computer screen, to the extent it was a visual aid, was no different from a blackboard, and to the extent it helped the expert witness make quick calculations, it was no different from an adding machine, and that, in any event, the computer responded only to the facts fed to it. As to the facts given to the machine, the plaintiff argued, the defendants would have the right to unlimited cross examination of the expert.
After listening to these arguments the trial court ruled that the utilization of the computer would not be permitted. The following excerpt from the record reveals his reasons, and what happened after he made his ruling:
"THE COURT: ... Number 1, it is not listed as any type of an exhibit on the list filed in this case for the plaintiff. The penalty for failure to do that is listed in my pre-trial order. It will not be used. I make exceptions if there is no showing *1241 of prejudice. I feel that there is some prejudice shown in this case because I think that defendants would be deprived, at least to some extent, of their effective cross-examination of this particular witness; therefore, they would be deprived of confrontation. That's my preliminary ruling.
"The alternative is a mistrial. That's the alternative to the exclusion of the utilization of this particular computer in this case, will be a mistrial. So you have a choice.
"MR. CURTIS [Counsel for plaintiff]: Your Honor, I don't desire a mistrial."
On this appeal Baugh argues that it was reversible error to refuse to allow his expert to use a computer generated display to illustrate and explain his opinion testimony regarding the mechanics of the occurrence of the accident in question, as said display was simply a demonstrative aid and could in no way be considered evidence.
Our first problem with appellant's contention is that we cannot determine from the record what the computer was supposed to do. La.C.C.P. Art. 1636 says in part:
"When a court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. In all cases the court shall state the reason for its ruling as to the inadmissibility of the evidence."
Although the appellant does not regard the computer use as evidence, and therefore the ruling complained of is not technically a ruling as to the inadmissibility of evidence, we believe that the article is nevertheless applicable in the present situation because the trial court's ruling did operate as some measure of restraint on the prepared testimony of plaintiff's expert.
Appellant did not request permission to make a proffer in the trial court nor do we find in the record any statement setting forth the nature of the "evidence", other than disconnected references thereto in argument. As was stated in McLean v. Hunter, 495 So.2d 1298 (La.1986), on remand 510 So.2d 771 (La.App. 1st Cir.1987), the Supreme Court said:
"The very purpose of requiring a proffer is to preserve excluded testimony so that the testimony (whatever its nature) is available for appellate review without a proffer, appellate courts have no way of ascertaining the nature of the excluded testimony."
A full proffer under the circumstances of this case would not have been necessary; an explanation by the witness, Killingsworth, outside the presence of the jury, explaining how he proposed to use the computer and in what way it would have helped the jury understand his testimony, would have sufficed, and would have been "a statement setting forth the nature of the evidence" in compliance with C.C.P. Art. 1636. As it is, there being neither a proffer nor such an explanation in the record, we cannot ascertain the nature of the excluded testimony.
For this reason we are unable to evaluate appellant's argument that the ruling was an abuse of the trial court's discretion.
There is another reason for holding that the ruling was not error. If, as argued by appellant, the use of the computer was intended to be merely a "demonstrative aid" (as the blackboard in Starks v. Kelly, 435 So.2d 552 (La.App. 1st Cir. 1983)), then it is difficult to imagine how the denial of its use could have prejudiced the presentation of plaintiff's case in such a manner as to alter the outcome of the trial. Nothing in the record indicates any prejudice resulted. Counsel for plaintiff apparently anticipated no prejudice when he rejected the trial court's offer of a mistrial as an alternative. A mistrial would have been tantamount to a continuance; the jury would have been dismissed and the case rescheduled for a later date. Plaintiff rejected the offer of a mistrial and chose to go to trial without the computer.
Finally, assuming for the sake of argument that error can be placed on the trial court for excluding the use of a computer, *1242 any assumed error would be harmless inasmuch as the facts of the case fully support the jury's verdict. West Louisiana Petroleum Corp. v. Gunn, 428 So.2d 1289 (La. App. 3rd Cir.1983).
We find no merit to this assignment of error.
ASSIGNMENT OR ERROR NO. 2
At the end of the testimony, counsel for plaintiff put on certain documentary evidence by way of rebuttal, after which the attorneys had a bench conference with the trial court. Following the bench conference, counsel for National Union asked that a stipulation be read into evidence as to the amount paid for past medical expenses to Baugh. In compliance with that request the court explained to the jury the purpose for the stipulation, and that it was being offered on behalf of National Union as the Workmen's Compensation insurer of Baugh's employer. The stipulation, as follows, was then read to the jury:
"MS. JOHNSON: ... The plaintiffs have stipulated that as a result that National Union Insurance Company provided workmen's compensation coverage to Dreco, Inc., on May 2nd, 1982 as a result of the injuries to Robert Baugh, Jr., during the course and scope of his employment for Dreco, Inc., on or about May 2nd, 1982. National Union Insurance Company pursuant to the provisions of the workmen's compensation insurance policy issued to Dreco, Inc., made medical payments to or on behalf of Robert Baugh, Jr., in the amount of $102,529.02."
The trial judge then closed the record and sent the jury out until the charges were ready to be read. Before leaving the courtroom one of the jurors wanted to know if he could ask a question about what was read in that stipulation. The judge responded:
"THE COURT: I can only tell you this: That you consider this in the context of the instructions that I will give to you. Okay? And I will instruct you on the law and I've already told you that it is a piece of evidence, and I'm going to tell you later on how you are to consider it. Okay? At this point, you accept the stipulation as being a fact; that the total of $102,529.02 were paid in medical expenses for and on behalf of this man in this case by the worker's compensation insurer. Okay?"
The record reflects that counsel for plaintiff was present in the courtroom throughout this time and made no objection, nor did he ask then or later for any special charge or explanation relating to the stipulation. Also, a lengthy colloquy concerning the jury charges is in the record and includes several pages of discussion about the medical bills and the court's proposed charge in which the judge announced that he would discuss the stipulation again, and explain it again to the jury. Counsel for plaintiff participated actively in this colloquy and voiced no objection or suggestion about the proposed way of handling this item in the charges. When the charge was given to the jury, it contained this:
"BY THE COURT: ... The parties in this case have told you, through a stipulation, that the sum of $102,529.02 in medical expenses were paid to or on behalf of the plaintiff by National Union Insurance Company, the workmen's compensation insurer of the plaintiff's employer. You may consider these medical expenses together with all other evidence in assessing the plaintiff's general damages, if any, but do not consider that sum in making your decision on past medical expenses. You should simply consider those past medical expenses that the plaintiff may have incurred which are separate from those that were paid by National Union. I will add on National Union's medical expenses to any judgment you may render concerning past medical expenses."
No objection was ever made to this charge, although appellant had ample notice in advance and opportunity to voice an objection.
On appeal plaintiff complains only of the stipulation that was read to the jury. He argues that this stipulation was not relevant to the issues, that it was highly prejudicial, and that it was prejudicial error for *1243 the trial court to consent to having it read aloud to the jury. Appellant argues that the only effect it had was to suggest to the jury that they could reduce damages by reason of payments from a collateral source, and this, appellant argues, is not the law.
Appellant cites a number of decisions discussing the impropriety of informing the jury that a plaintiff has received compensation from a collateral source. These decisions are not applicable in the present case, however, because appellant never objected to the reading of the stipulation to the jury, although ample opportunity existed to do so. Nor did appellant object to the charge to the jury, although again ample opportunity existed to object and to request other instructions. Appellant did neither.
La.C.C.P. Art. 1793 declares that a party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict or immediately after the jury retires. Article 1792 provides that at any time during the trial, the court may instruct the jury on the law applicable to any issue in the case. In this case, the trial judge twice instructed the jury on the subject of National Union's payment of the medical expenses, once in response to a juror's question right after the stipulation was read, and again during the formal charge. Since the appellant did not object to the charges he cannot now assign as error the giving of an instruction in this court. Oh v. Allstate Insurance Company, 428 So.2d 1078 (La.App. 1st Cir.1983).
For the foregoing reasons, the judgment of the trial court is affirmed, at appellant's costs.
AFFIRMED.