Judgment rendered March 1, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,047-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE: DATIVE TUTORSHIP OF
THE MINOR CHILD BAILEY MOORE

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 22871

Honorable Michael O. Craig, Judge

* * * * *

| | |
|---|---|
| CARMOUCHE, BOKENFOHR, BUCKLE, & DAY, PLLC<br>By: John N. Bokenfohr<br>  Amy Gardner Day | Counsel for Appellant, Stephen G. Moore |
| HENRY GOODRICH, JR. | |
| CHRISTOPHER M. STAHL | Counsel for Appellee, Sheryl Garcie |

* * * * *

Before PITMAN, HUNTER, and ELLENDER, JJ.

**ELLENDER, J.**

Stephen Moore, the maternal grandfather of a young girl, Bailey, appeals the decision of the trial court awarding tutorship of Bailey to his sister, Sheryl Garcie. For the reasons expressed, we affirm.

## FACTS AND PROCEDURAL HISTORY

Bailey, born March 25, 2018, is the child of Stephen's daughter, Ashley Moore, and Bailey's father's identity is unknown. Ashley, who apparently struggled with substance abuse, unexpectedly passed away on October 26, 2021, without leaving a will designating who would receive tutorship of Bailey. This intrafamily dispute ensued, ultimately resulting in Sheryl being named tutor, with liberal visitation afforded to Stephen.

Stephen and Sheryl, as well as their sister Debbie Hughes, are the three children of John and Leta Moore. By all accounts, this extended Bossier family was a close-knit group often sharing holidays, birthdays, and special events. Stephen, Sheryl, and Debbie each have their own children; Stephen's child was Ashley, Sheryl's son is Ethan Garcie, and Debbie's daughter is Heather Ogden. Unfortunately, family unity dissipated once this tutorship proceeding began.

Stephen is a single 62-year-old man who has been completely disabled since suffering injuries from a motorcycle accident in the late 1970s. Following the accident, Stephen lived with his parents for most of his adult life until Ashley became pregnant with Bailey and he bought a home for the three of them.[1] They all lived together for a few years until

---

[1] The record is silent as to the identity of Ashley's mother. It appears she was not involved in Ashley's life and that Ashley was raised in the home of John and Leta Moore, with little help from Stephen.

early 2020, when, after disputes with her father, Ashley and Bailey moved in with her boyfriend and eventual husband. This marriage did not last long, requiring Ashley and Bailey to move in with family members for varying periods of time.

Sheryl, a 64-year-old married woman, was present when Bailey was born and appears to have had a close bond with her since birth. In addition to being a significant part of Bailey's life, Sheryl cared for her when Ashley worked, although Stephen cared for her as well during this time. After Ashley's death, Bailey lived primarily with Stephen, while Sheryl kept Bailey on the weekends when Stephen helped his elderly father at a flea market. Once Sheryl filed this petition for tutorship, Stephen no longer allowed Sheryl to keep Bailey or have any contact with her. Additionally, Leta distances herself from Sheryl.

On December 14, 2021, Sheryl filed a "Petition for Confirmation as Dative Tutor and for Appointment of Undertutor" asking she be appointed tutor of Bailey, and her niece, Heather Ogden, be appointed undertutor. Stephen answered the petition, opposed these appointments, and asked that he be appointed Bailey's tutor. On January 19, 2022, the trial court issued an interim order appointing Sheryl and Stephen provisional co-tutors of Bailey, each having alternating weeks with Bailey. On February 16, 2022, Stephen asked the trial court for authority to enroll Bailey in therapy due to emotional problems she was having following Ashley's death.

Trial took place on March 10, 2022, with the court hearing from the majority of the family, including Sheryl and Debbie, their children, Ethan and Heather, as well as Stephen. Following the conclusion of the evidence, the trial court designated Sheryl the tutor, Heather the undertutor, and

2

granted liberal visitation to Stephen, including placing Bailey with Stephen Monday through Friday while Sheryl works until Bailey starts pre-K. The court also designated Ashley Clinger the counselor for Bailey. It is from this judgment that Stephen now appeals.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, Stephen asserts the trial court erred by refusing to allow him to call Leta Moore to testify at the hearing. Stephen argues Leta is the matriarch of the family and her testimony would have provided evidence to attack the credibility of the other family members. Stephen submits that his mother often hosted many of the family gatherings at her home. Additionally, as Bailey's great-grandmother, Leta frequently cared for her since the time she was born. The record also suggests that whenever Stephen had custody of Bailey, Leta was significantly involved in helping take care of her.

Stephen called Leta to testify after the court had already heard from all three of Leta's children and two of her grandchildren, in addition to the parties entering stipulations that other witness testimony would be substantially similar. The trial court denied this request and stated:

> And I'm denying that request for the specific reason that I feel like I've heard enough to make a determination in this case. Anything that Ms. Moore would testify to would probably… not assist the Court or provide information to the Court that would change the decision that I'm going to make in this case. And the Court feels like it would only further serve to drive a wedge further in and to further complicate problems that didn't exist in this family based on the testimony that I've heard from everybody today in September of 2021 but exists now. I'm not putting Mom of these two parties in the middle of these two parties when it's not going to further assist the Court.

Following this denial, Stephen's counsel noted an objection for the record. Counsel was subsequently asked by the trial court if there was anyone else he wanted to call to which he responded, "no."

> La. C.C.P. art. 1636 provides in pertinent part:
>
> A. When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence.

Following the trial court's exclusion of Leta's testimony, Stephen's counsel did not proffer it into evidence or make a statement setting forth its substance. In *Galloway v. Lolley*, 44,501 (La. App. 2 Cir. 8/19/09), 17 So. 3d 479, this court dealt with a similar issue when testimony was excluded at trial and no proffer was made by the offering attorney, concluding that because counsel failed to submit a proffer, the excluded evidence was not reviewable on appeal. Further, the Louisiana Supreme Court stated in *McLean v. Hunter*, 495 So. 2d 1298 (La. 1986), "[t]he very purpose of requiring a proffer is to preserve excluded testimony so that the testimony (whatever its nature) is available for appellate review. Without a proffer, appellate courts have no way of ascertaining the nature of the excluded testimony."

When testimony is excluded by the trial court, the appellate court cannot review the ruling without a proffer, or the equivalent of a proffer, by the offering party. Here, Leta was called as a witness, but the court did not allow it for the reasons stated. Counsel objected and noted his objection for the record but did nothing further. Counsel did not proffer the excluded testimony or make any statement indicative of its content. As such, this assignment lacks merit.

4

Further, we find it worth noting that even if counsel would have provided a proffer, or made a statement summarizing what she would have said, excluding Leta's testimony was likely the correct decision by the court for the reasons it stated. The denial was made after the court had listened to testimony from Stephen, Sheryl, and Debbie, as well as two of their children, and each witness testified to the divide that has come between their once close-knit family as a result of this dispute. Additionally, several stipulations had already been made that additional testimony would be duplicative. The court was able to make credibility determinations of the two parties vying for tutorship, and heard substantial testimony that, in this court's view, overwhelmingly supports the grant of tutorship to Sheryl as being in Bailey's best interest. It is reasonable to assume Leta's testimony would have supported Stephen, who lived with her for most of his life, but such testimony would not have been persuasive enough to overcome the significant testimony in favor of Sheryl. In denying Leta's testimony, the court was merely trying to preserve what little fondness may have been left between this family. Allowing the mother of both parties to testify would almost certainly have made matters worse for the family.

Within his assignment of error, Stephen also argues the court predetermined the case. This court finds nothing in the record to support this conclusion. The trial court properly heard and considered all necessary evidence prior to ruling on this matter.

**ASSIGNMENT OF ERROR NO. 2**

As to his second assignment of error, Moore asserts the trial court misinterpreted, misapplied, and/or failed to apply La. C.C. arts. 133 and 134

5

in its ruling designating Sheryl as the tutor of Bailey and awarding her custody. This assignment is also without merit.

Although custody was the predominant issue, this matter was before the trial court on the issue of tutorship for Bailey. When Ashley passed away, she did not leave a will designating who would receive tutorship, and additionally, Bailey's father is unknown. La. C.C. art. 256 B provides the procedure for an unacknowledged child whose mother has died:

> After the death of the mother, if the father had not acknowledged the child prior to the mother's death, the court shall give first consideration to appointment as tutor either of her parents or siblings who survive her and accept the appointment, and secondly, the father, always taking into consideration the best interests of the child.

Pursuant to La. C.C. art. 256, the trial court must have first considered Bailey's maternal grandparents in determining tutorship. Stephen is the maternal grandfather of Bailey; however, the article does not require that he be named tutor, just that he be considered first.

The court was presented with two options for a tutor, Stephen and Sheryl. While Stephen was considered, the evidence overwhelmingly supports that it is in Bailey's best interest to name Sheryl tutor.

Even if the factors to be considered in child custody cases are applicable here, they also weigh heavily in favor of Sheryl. Child custody decisions are reviewed under the abuse of discretion standard. *Leard v. Schenker,* 06-1116 (La. 6/16/06), 931 So. 2d 355; *Belcher v. Pace*, 54,397 (La. App. 2 Cir. 4/13/22), 337 So. 3d 178. A trial court's determination on matters of child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. *Wilson v. Brown*, 54,699 (La. App. 2 Cir. 8/10/22), 345 So. 3d 513, *citing Green v. Myers*, 54,200 (La.

6

App. 2 Cir. 3/9/22), 335 So. 3d 514, *writ denied*, 22-00737 (La. 5/18/22), 338 So. 3d 1188. Every child custody case must be viewed on its own particular set of facts and relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. *Fuller v. Fuller*, 54,098 (La. App. 2 Cir. 7/21/21), 324 So. 3d 1103, *writ denied*, 21-01223 (La. 9/27/21), 324 So. 3d 621.

La. C.C. art. 133 provides:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

In his brief, Stephen asserts La. C.C. art. 133 discusses the awarding of custody to a nonparent and favors the person with whom the child has been living in a wholesome, stable environment. Here, this custody dispute is between two nonparents: Stephen, Bailey s grandfather, and Sheryl, Bailey's great-aunt. Custody awards to nonparents are governed by La. C.C. art. 133. *Jones v. Willis*, 43,608 (La. App. 2 Cir. 9/17/08), 996 So. 2d 364. Following Ashley's death, Bailey had been living with Stephen in what Stephen claims was a wholesome and stable environment; however, the record contradicts this claim. Although Bailey had been living with Stephen, the record overwhelmingly supports it is Sheryl who can best provide Bailey with an adequate and stable environment. An award of custody to Sheryl is allowed under La. C.C. art. 133.

Lastly, we turn to an evaluation of La. C.C. art. 134, which provides a list of some of the factors the court shall consider in determining the best interest of the child. While the court should consider each case in light of

7

these factors, it is not required to provide an exhaustive list of each factor or make a mechanical evaluation of each factor in reaching a determination that is in the best interest of the child. *See Hodges v. Hodges*, 15-0585 (La. 11/23/15), 181 So. 3d 700; *Smith v. Holloway*, 53,352 (La. App. 2 Cir. 1/15/20), 289 So. 3d 647. Further, the trial court is not required to provide a literal articulation of each La. C.C. art. 134 factor nor is it required to specifically explain its balancing of each factor. *Manno v. Manno*, 49,533 (La. App. 2 Cir. 11/19/14), 154 So. 3d 655, *citing Chandler v. Chandler,* 48,891 (La. App. 2 Cir. 12/13/13), 132 So. 3d 413.

In articulating oral reasons for judgment, the trial court stated La. C.C. arts. 133 and 256 must be considered in making a determination and that the two articles serve to complement one another. The trial court went on to state La. C.C. art. 256 applies following the death of a mother,

> And 256 says that I first have to look at that of the direct ascendant, and in this case being Mr. Moore, but ultimately have to make a determination based on the best interest of the child.

As to La. C.C. art. 134, the trial court did not specifically reference these factors prior to making its ruling, simply stating,

> But in making a determination of what I feel is in the best interest of the child based on the information before me, I am going to grant the petition[.]

The trial court did not have to specifically list the factors or evaluate them in its ruling, just consider them. Further, the court indicated it felt its ruling was "in the best interest of the child." In reviewing the record, and analyzing the oral reasons given by the trial court, we believe the trial court considered the substance of the La. C.C. art. 134 factors in making its determination to name Sheryl as tutor and granting her custody of Bailey.

8

The record is replete with evidence and testimony that support an award of tutorship/custody to Sheryl and not to Stephen.

Stephen has been disabled for over 40 years and, for much of his adult life, has lived in his parents' home, only moving out in his late 50s. As a result of the motorcycle accident that led to his disability, Stephen still suffers from nerve damage, spasms, and ankle and shoulder ailments. In addition, Stephen has several other physical ailments, including lack of mobility in his shoulders, back pain, and neck problems. He currently takes muscle relaxers and medication for depression as well as medication for high blood pressure. Stephen is also an avid smoker who has struggled in the past with substance abuse and alcoholism.

When asked about the relationship between Stephen and Ashley, witnesses classified him as a below-average father who was often absent from Ashley's life. When Ashley was young, Stephen was also known to be an excessive drinker. By his own admission, Stephen expressed that he "fell off the deep end" and was frequently in and out of Ashley's life. Because of this, the duty of raising Ashley often fell upon Stephen's parents.

Stephen does not have a regular job, only working at the local flea market on the weekends with his father. His house and surrounding area was described as junky, disorganized, and messy. One family member, who classified Stephen's home as "gross," recalled a visit to Stephen's home when she inadvertently sat in a bowl of noodles which he had left out on the couch, and another witness found pizza boxes were left on the stove. Others testified his house had trash and junk scattered throughout it. Stephen's physical hygiene was questioned, categorized by family members as ungroomed and unclean. At the hearing, several witnesses testified to

Stephen's unfitness, both literally and physically, to care for a young, energetic child like Bailey. Multiple witnesses testified to Stephen being out of shape, stating he drinks an excessive amount of Pepsi and smokes cigarettes while lounging around the house. During family functions, Stephen was often quiet and by himself, not interacting with others.

On the other hand, witnesses described Sheryl as a loving, caring mother who has already admirably raised a disabled child of her own. Sheryl is an IT Director for a real estate company where she enjoys a lucrative salary. She and her husband of 30 years have a three-bedroom home which they have lived in for the entirety of their marriage. The children in this extended family grew up spending significant time at Sheryl's home. One of these bedrooms is already set aside for the exclusive use of Bailey. Although never Bailey's primary caregiver, Sheryl has been a major part of Bailey's life since her birth due to the many times she has been called on to care for her. Because of these frequent interactions, Sheryl and Bailey seem to have developed a strong, emotional bond. Several family members expressed that Bailey is always overjoyed to see Sheryl and that Bailey specifically seeks her out in times of trouble or distress.

While Stephen was not awarded tutorship/custody of Bailey, he was afforded significant and liberal visitation rights. In this court's view, the evidence overwhelmingly supports the award of custody to Sheryl is in Bailey's best interest. It would have been an abuse of discretion had the trial court *not* awarded her custody. This assignment lacks merit.

## CONCLUSION

For the foregoing reasons, we conclude the trial court properly named Sheryl Garcie tutor and Heather Ogden undertutor of Bailey. The judgment is affirmed. Costs are assessed to appellant.

**AFFIRMED.**